**Garnett Gilliam WEBSTER, Petitioner,**

v.

**UNITED STATES of America, Respondent (two cases).**

**Nos. 393–70–R, 415–69–R.**

United States District Court, E. D. Virginia, Richmond Division.

Aug. 24, 1971.

ment on the same check. On June 13, 1968,[1] he was brought before District Judge Hoffman, an attorney was appointed under the Criminal Justice Act, and defendant was released under a $1,000 bond, with the alternative of a 10% deposit or a sufficient surety bond. A specific provision of the order specifying conditions of release, signed by Webster, stated that, "Defendant will not depart the Eastern District of Virginia without prior authorized permission."

On August 15, 1968, Webster's attorney, Stephen M. Kapral, obtained authority to employ a handwriting expert at the expense of the Government. At the same time District Judge Merhige ordered the defendant to pay $25.00 per week to the Clerk, as it appeared that Webster was then employed in a managerial capacity at a rate of $175.00 per week. Webster was formally arraigned, entered a plea of not guilty, and demanded trial by jury. His case was set for trial on September 12, 1968.

On August 22, 1968, Webster's counsel moved for a continuance alleging insufficient time to prepare for trial. This motion was heard on September 4, 1968, and Judge Merhige granted same, resetting the case for trial on October 21, 1968.

On the last stated date, Webster failed to appear for trial. His attorney was present and many witnesses had been summoned. Efforts were made to locate Webster, including a visit to his home, all to no avail. Judge Merhige then directed the issuance of a bench warrant and fixed a new bond in the sum of $15,000 with surety.

On November 29, 1968, an order was entered permitting Mr. Kapral to withdraw as counsel for Webster, the defendant having disappeared and no word having been received from him.

A grand jury on February 11, 1969, indicted Webster for failing to appear

Joseph M. Spivey, III, Richmond, Va., for petitioner.

Justin Williams, Asst. U. S. Atty., Richmond, Va., for respondent.

### MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

In Criminal Action No. 8006–R, Garnett Gilliam Webster was indicted for theft from the mails, unlawful possession of a United States Treasury check which had been stolen, and forging an endorse-

---

1. On June 26, 1968, Webster was brought before District Judge Merhige and the appointment of counsel was reaffirmed with Judge Merhige requiring a payment of $10.00 per week to the Clerk, pursuant to the provisions of the Criminal Justice Act.

on October 21, 1968, in violation of 18 U.S.C., section 3150. This case became Criminal Action No. 31–69–R. On April 3, 1969, Webster was taken into custody at or near Burlington, North Carolina. He addressed a letter to Judge Merhige in which he stated that he had no excuse to offer for his failure to appear, that he intended to plead guilty to all charges, that he waived the appointment of counsel and specifically did not want Mr. Kapral as his attorney. Nevertheless, Judge Merhige requested Mr. Kapral to serve and, on April 24, 1969, the appointment was accepted.

Webster was brought before Judge Merhige on April 25, 1969. Mr. Kapral was present and there was no indication from Webster that he was dissatisfied with Kapral's service.

Webster was arraigned on the bail jumping charge and entered a plea of guilty. After fully complying with Rule 11, Federal Rules of Criminal Procedure, the guilty plea was accepted. On May 12, 1969, a presentence report having been prepared in advance of that date, Judge Merhige then examined the report and sentenced Webster to three years' imprisonment for bail jumping.

Webster was thereafter rearraigned on the charges in Criminal Action No. 8006–R. The charges in the three-count indictment were carefully explained by the Court. Webster entered a plea of guilty to the first count charging theft of the Treasury check from the letter from the mails. As to the other two counts, he entered not guilty pleas. Upon inquiry, Judge Merhige declined to accept the guilty plea and an agreed trial date of May 22, 1969, was fixed.

Webster, having executed a waiver of trial by jury on May 12, 1969, went to trial in Criminal Action No. 8006–R on May 26, 1969.[2] Judge Merhige found Webster not guilty as to the charge of abstracting and removing from the mails the letter which allegedly contained the check but, as to the forgery charge and the charge that Webster unlawfully possessed a check contained in a letter which had been stolen, Judge Merhige found Webster guilty as charged.

Following the finding of guilt as to counts two and three, Judge Merhige inquired of the Probation Officer whether a report was available. Answering in the affirmative, the Probation Officer handed to Judge Merhige the *same* presentence report which Judge Merhige had examined prior to sentencing Webster on the bail jumping charge on May 12, 1969—some fourteen days prior thereto. Judge Merhige then sentenced Webster to five (5) years' imprisonment on count two, to run consecutively with the sentence of three (3) years imposed on the bail jumping charge on May 12, 1969. On count three the sentence was five (5) years running concurrently with the sentence imposed on count two. Webster was advised of his right of appeal and subsequently perfected same. The judgment was affirmed, United States of America v. Webster, 422 F.2d 290 (4 Cir., 1970). Certiorari was denied on June 22, 1970, 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573.

On Sepetmber 26, 1969, Webster filed a *pro se* motion under 28 U.S.C., section 2255, attacking the bail jumping proceedings. Basically his contention was that his plea was involuntary in that he was afforded ineffective counsel. Judge Merhige dismissed the motion without an evidentiary hearing.[3] Webster appealed and the order of dismissal was vacated by Memorandum Decision No. 14,113 on April 2, 1970. After calling upon the United States to answer, Judge Merhige, on August 19, 1970, appointed Joseph M. Spivey, III, to represent Webster. It should be stated at this point

---

2. Apparently the case had been rescheduled from May 22, 1969, to May 26, 1969.

3. The motion as filed sought permission to withdraw his plea of guilty because of incompetent counsel. On appeal, apparently Webster contended that he had been prevailed upon to plead guilty by the offer of a bargain which was not kept. This allegation on appeal seemed to be the basis for a reversal.

that Mr. Spivey's services to Webster have been exceptional and well beyond the call of duty.

For reasons that are apparent from a detailed review of the record, Judge Merhige assigned the case for hearing at a time when Judge Hoffman was scheduled to be in Richmond.

Webster has also filed a motion under 28 U.S.C., section 2255, attacking the validity of the sentence in Criminal Action No. 8006–R. When the hearing was convened on November 13, 1970, the Court was under the impression that it was hearing both motions to vacate. Mr. Spivey, however, said that he was appointed only in Civil Action No. 415–69–R. Following a conference all parties, including Webster, agreed that both cases would be heard as they were so obviously interrelated. Mr. Spivey was accordingly designated to represent Webster in Civil Action No. 393–70–R which is an attack upon the forgery and unlawful possession sentences.

After a full hearing the matters were briefed and orally argued in Norfolk.

The record discloses, and Webster's counsel candidly admits, that there was no "deal" or "bargain." Counsel merely urges that Webster was caused to believe that there was a "deal" by reason of his state of mind. We reject this contention as devoid of merit. At best, Mr. Kapral may have mentioned that he would like to work out a deal which would result in a dismissal of the charges in Criminal Action No. 8006–R in exchange for a guilty plea on the bail jumping charge, but Kapral emphatically denies that he ever told Webster, or led him to believe, that he had conferred with the United States Attorney with respect to any "bargain." It is also interesting to note that Judge Merhige, after the guilty plea had been entered in person, inquired of Webster as follows:

"THE COURT: Has anybody suggested to you if you plead guilty the Court would be more lenient in its punishment?

"THE DEFENDANT: No, sir."

Moreover, during the extensive interrogation under Rule 11, and even prior to Webster's being brought to Richmond as evidenced by his letter to Judge Merhige written from High Point, North Carolina, Webster has always admitted his guilt on the bail jumping charge, and his belated effort to urge that his state of mind caused him to plead guilty is unworthy of credence.

It was immediately after Webster was sentenced on May 12, 1969, that he also unsuccessfully endeavored to enter a guilty plea to count one of the indictment in Criminal Action No. 8006–R. After Webster entered his guilty plea to count one, and his not guilty plea to counts two and three, Judge Merhige inquired as to whether Webster demanded a trial by jury on the not guilty counts, to which Webster replied in the negative. Judge Merhige then said:

"THE COURT: Is that a deal or negotiation?

"MR. LOWE [Assistant U. S. Attorney]: Your Honor, the negotiations were entirely between counsel. Defendant was not advised of any discussion.

"MR. KAPRAL: Your Honor, could I make a brief statement, please? I have this unique situation. Mr. Webster has been incarcerated at the Hanover County Jail for the last month or two months, excuse me. And he says that he is in such a mental state at this time that he can't stand it much longer up there and he is worried about going to trial on this forgery charge that he will have to stay up there a month longer and he says he wants to go to the Lewisburg Penitentiary, or wherever he is going, and be done with it. I would like to see him plead not guilty, but this is up to him. I have told him.

"THE COURT: Well, we can solve that. Are you guilty?

"THE DEFENDANT: Yes, sir.

"THE COURT: Is that the reason you are pleading guilty, or are you

pleading guilty because you want to get out of the Hanover jail?

"THE DEFENDANT: Both, sir.

"THE COURT: Do you have any defense to the charge in count one?

"THE DEFENDANT: No defense, sir, except—

"THE COURT: I beg your pardon?

"THE DEFENDANT: I was under drugs and drinking at the time.

"THE COURT: Well, that may be a defense, Mr. Webster. I don't know. I can not accept the plea. I will not accept the guilty plea.

"THE DEFENDANT: I don't believe it was a defense, sir.

"THE COURT: I can't do it. I am not going to accept it, no siree. You may be found not guilty. It is my responsibility to make a determination as to whether I can accept it and I can not accept a guilty plea—and let the word go out—except from people who are guilty and there isn't any question about their guilt. And there may be a question about yours, Mr. Webster. I will attempt to get you as quick and as speedy a trial as possible.

"THE DEFENDANT: Could I start serving my other before I get sentenced for the other?

"THE COURT: You are going to get credit for your time, but as far as I am concerned you are not guilty of this until the government proves it beyond a reasonable doubt. Enter a plea of not guilty on count one.

"THE DEFENDANT: Sir?

"THE COURT: I will not permit you to enter a plea of guilty under count one.

"THE DEFENDANT: There is no way I can plead guilty under all three?

"THE COURT: No, sir, not from the statement you made to the Court this morning. I am not going to accept it. Do you wish a jury on counts one, two, and three?

"THE DEFENDANT: No, sir."

The foregoing is quoted at length to indicate that Judge Merhige raised the issue of a "deal" or "negotiation" and that, although Webster had ample opportunity to state that in Webster's mind there was a "deal," he made no mention of same. Nor did Webster suggest any "deal" during the trial and sentencing procedure of May 26, 1969. When afforded the right of allocution, the following colloquy took place:

"THE COURT: Do you know of any reason the Court should not now impose sentence or any statement you would like to make before the Court imposes sentence on you?

"THE DEFENDANT: Just, sir, at this time this was—I was facing a fifty-fifty chance of not ever walking again and as the wife has testified the condition I was under. If anybody could have used a hundred and fifty bucks, I think it was me. But I don't recall. And I just ask that when you do sentence me that you send me somewhere where I can get some attention, sir.

"THE COURT: Have you gone over the presentence report in reference to your past record with your counsel? I assume he went over it with Mr. Evans, the probation officer. Is it correct?

"THE DEFENDANT: To my knowledge I have not seen it.

"THE COURT: You have been in this business before of taking checks and forging them, isn't that correct?

"THE DEFENDANT: In a way, yes, sir.

"THE COURT: In a way?

"THE DEFENDANT: Not like this, no sir.

"THE COURT: No. Worse. You had a regular gang going. But you are out of business, Mr. Webster. Is there anything else you want to stay?

"THE DEFENDANT: No, sir."

■ Apparently the only so-called "deal" was with Kapral as the prosecution had agreed that if Webster entered

a guilty plea to one of the three counts in Criminal Action No. 8006–R, the Government would move to dismiss the remaining two counts. This is standard procedure in multiple-count indictments. It is abundantly established by the evidence that this was the only "negotiating" between counsel. We emphatically reject the theory that Webster entered his guilty plea on the bail jumping charge in anticipation that the other charges would be dismissed.

■ The other contention with respect to the sentence imposed on the bail jumping charge is that of ineffective counsel. Specifically, it is urged that Kapral should have raised the question that Webster had been drinking on the morning that he was scheduled to be in court on October 21, 1968.[4] Webster did not mention to his attorney that he started drinking on the morning of October 21, 1968, as he said, "Well, I didn't think that this also entered into the problem." When Webster, according to his testimony, telephoned Kapral a few days after October 21, all he said was, "Man, I just didn't know what was going on." While this brief statement may carry an implication of intoxication, it does not necessarily follow that the recipient of same should construe it in this light. It is just as likely to be interpreted as fear on the part of Webster to show up for the trial. We do not find that these precise words were spoken by Webster, but Kapral does admit that Webster, at some point after he failed to appear, suggested that he had been drinking on that date (which could have been later in the day), but Webster had not mentioned to Kapral the alleged seriousness of his problem.

After the abortive attempt to enter the guilty plea to count one in Criminal Action No. 8006–R, Kapral explored the matter in trial preparation and at the trial. His pretrial investigation in No. 8006–R did disclose that Webster had a back problem, but alcoholism was not disclosed, Webster, although previously in trouble in Florida and Georgia on charges relating to drinking, tacitly conceded that his drinking had little or nothing to do with his failure to appear in court. This is apparent from Webster's conclusion not to surrender even though, several days thereafter, his attorney urged that Webster return to Richmond. Moreover, on the trial date, Government agents went to Webster's house and found it locked with no one present.

■ It is argued that Kapral was ineffective in not resorting to Rule 32(d), Federal Rules of Criminal Procedure, which permits the withdrawal of a guilty plea to correct a manifest injustice. True, Kapral may not have been familiar with this rule. However, even if he had been thoroughly acquainted with the rule, it is obvious that an effort to withdraw the guilty plea would have been frivolous. To hold otherwise would require us to conclude that Webster, by 9:00 a. m. on October 21, 1968, was in such a stupor from intoxication that he could not commence his trip to the courthouse to be present for a 10:00 a. m. trial. We are not so naive as to accept such a factual situation from the evidence adduced at the plenary hearing. Certainly in the absence of an express request from Webster to take such action, it would be gross injustice to brand this alleged inaction as ineffective counsel. Even if requested to make this effort, we do not find that this is ineffectiveness of counsel in any case, more especially under the facts here presented.

We turn, then, to the only interesting issue raised in these cases. It is quite true that Judge Merhige examined the presentence report on May 26, 1969, when he imposed the sentence in No. 8006–R. He had also seen this *same* report on May 12, 1969, when he sentenced Webster on the bail jumping

---

4. There is some reference to the date as being October 26, 1968. However, the Clerk's minutes indicate October 21 as the trial date when Webster did not appear, and all subpoenae were returnable on October 21.

charge. The presentence report had been submitted to and read by Judge Merhige prior to the sentencing hearing that morning.

Rule 32(c) (1) provides in pertinent part that, "The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty."

Thus, Webster argues, his trial by Judge Merhige on May 26, 1969, was fatally defective as Judge Merhige had seen the report on May 12, 1969, when he sentenced Webster on the bail jumping charge.

It is conceded by Webster that there was no report prepared especially for the charges in No. 8006–R. Since Webster had been in custody during the period of fourteen days, if such a report had been prepared for No. 8006–R the only change would have reflected the details of the particular offense or offenses, together with the details of the sentence imposed on May 12, 1969.

■ Webster relies upon Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), which, as suggested by Webster's able counsel, is distinguishable on its facts. In that case the judge read the presentence report while the jury was deliberating and, since there was no communication between the judge and jury in the period thereafter, the Supreme Court held that there was no prejudice shown. A violation of Rule 32(c) (1) gives rise to a presumption of prejudice. Calland v. United States, 371 F.2d 295 (7 Cir., 1966); Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959).

We do not believe that Rule 32(c) (1) has any application to the factual situation here presented. It was Webster—and not his counsel—who waived trial by jury on May 12, 1969, in No. 8006–R following his sentence on the bail jumping charge. As disclosed by the record, Webster knew that Judge Merhige had examined the presentence report before sentence was imposed on May 12, and before he waived trial by jury. It is abundantly clear that Webster knew that Judge Merhige would be the judge who would try him on No. 8006–R. Webster knew that he had a right to a jury trial.

Cases are legion in which judges have tried defendants who are recidivists. While the judge will not customarily remember the individual being tried—at least until he has been found guilty and a presentence report discloses the prior conviction—to give validity to Webster's argument would require a trial judge to disqualify himself in any case involving a defendant who has been previously tried and convicted by him—a fact that the judge would not ordinarily know until after the trial had been concluded. We do not accept the argument that a presumption of prejudice arises in such a situation, nor do we believe that the authorities support such an argument.

■ More appropriately, we believe that, in the absence of a suggestion that the trial judge recuse himself, this case falls within the line of authorities which hold that mere knowledge of background information as to a criminal defendant is not sufficient to require that the judge step aside. In pretrial proceedings such as motions to reduce bail, motions to suppress evidence, and various other discovery proceedings, much information is obtained as to a defendant, his prior criminal record, the particular facts of the case, and such other knowledge as would ordinarily be imparted to a trial judge. Nevertheless, it is well settled that such a situation does not require, nor indeed justify, a district judge to disqualify himself, or even suggest that he should request another judge to hear the case. Smith v. United States, 360 F.2d 590 (5 Cir., 1966); Warren v. Richardson, 333 F.2d 781 (9 Cir., 1964); United States v. Sansone, 319 F.2d 586 (2 Cir., 1963); Cox v. United States, 309 F.2d 614 (8 Cir., 1962); Barnes v. United States, 241 F.2d 252 (9 Cir., 1956); Barry v. Sigler, 373 F.2d 835 (8 Cir., 1967); United States ex rel. Berrett v. Myers, 381 F.2d 814

(3 Cir., 1967), cert. den. Berrett v. Myers, 390 U.S. 973, 88 S.Ct. 1065, 19 L.Ed.2d 1185 (1968); United States v. Lawrenson, 334 F.2d 468 (4 Cir., 1964);[5] Morse v. Lewis, 54 F.2d 1027 (4 Cir., 1932), cert. den. 286 U.S. 557, (1932). The presumption is that, in nonjury cases, the trial judge will not confuse the evidence in one case with that in another. United States v. Smith, 390 F.2d 420 (4 Cir., 1968); Dove v. Peyton, 343 F.2d 210 (4 Cir., 1965). Absent an affirmative showing to the contrary, it is presumed that when a case is tried by a court without a jury only material and competent evidence is considered. Havelock v. United States, 427 F.2d 987 (10 Cir., 1970). And it is immaterial whether the judge permits a jury waiver to be executed, United States v. Sansone, *supra,* or whether the judge will hear the case without a jury, United States ex rel. Berrett v. Myers, *supra.*

If we are to interpret Rule 32(c) (1) in its strictest sense, there could conceivably be a technical violation as it is undeniably true that Judge Merhige examined, on May 12, 1969, the same presentence report which was reexamined on May 26, 1969, after Judge Merhige found Webster guilty on two of the three counts in No. 8006–R. We think that the comments of former Chief Justice Warren in Fallen v. United States, 378 U.S. 139, 142, 84 S.Ct. 1689, 1691, 12 L.Ed.2d 760 (1964) are applicable where we find—

> "Overlooked, in our view, was the fact that the Rules are not, and were not intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances * * *. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. That the Rules were not approached with sympathy for their purpose is apparent

when the circumstances of this case are examined."

As of this writing the Advisory Committee on Criminal Rules has adopted, and it is about to be circulated, a proposed revision to Rule 11 which will permit "plea agreements" to be incorporated into the federal system. To accomplish this purpose Rule 32(c) (1) will likewise be revised to permit a judge to examine a presentence report for the purpose of determining whether the "plea agreement" is consistent with the proper administration of justice. The judge will thereafter either accept or reject the "plea agreement." While it may be preferable for the same judge to avoid trying the defendant on his not guilty plea, following the rejection of a guilty plea, if another judge is readily available, we must take cognizance of the fact that in some areas of our country the luxury of another judge is unknown. To provide that the judge, after having examined a presentence report, is presumed to be prejudiced in every situation would result in a failure of the proposed "plea agreement" system which, as we must realize, generally operates to the benefit of the defendant.

There are thousands of cases in which the defendants unsuccessfully, as in the instant proceeding, attempt to enter pleas of guilty but, by reason of the rigid requirements of Rule 11, the pleas are rejected. In the vast majority of these cases the defendant thereafter waives trial by jury. To interpret Rule 32(c) (1) as urged by Webster is to tacitly state that the same judge should not preside at any nonjury trial following the rejection of a guilty plea.

In United States v. Pruitt, 341 F.2d 700 (4 Cir., 1965), the trial judge declined to sentence a defendant on one charge as he knew that there were other cases pending against the same defendant which the judge was to hear with-

---

5. In Lawrenson, the trial judge assigned a civil action to another judge because of his prior participation in the bank robbery trial. Subsequently, the same trial judge heard and determined motions in the bank robbery case.

out a jury. He refrained from examining the presentence report pending the trial of the other charges. The defendant, following conviction on the two remaining indictments, was sentenced on all three charges after the presentence report was examined. The defendant appealed the sentence on the first trial alleging a violation of Rule 32(a) which requires that "sentence shall be imposed without unreasonable delay." The appellate court rejected this contention and approved of the delay in sentencing. Dictum in *Pruitt* does state—

> "On the other hand the trial judge, who was to act as judge and jury in trial of other charges against appellant to which he had pleaded not guilty, could not in good conscience receive information as to appellant's criminal record, reputation, and various other information generally contained in presentence reports prior to his trial of such other charges."

While the procedure followed by the trial judge in *Pruitt* was undoubtedly correct, such a practice is not mandatory and should not be interpreted as such. The trial judge in *Pruitt* was aware of the fact that the defendant had waived a jury trial as to the charges to be subsequently heard. As to Webster, he appeared before Judge Merhige on June 26, 1968, and demanded trial by jury in No. 8006–R. This was the posture of Webster's case when Judge Merhige examined the presentence report preparatory to sentencing Webster on the bail jumping charge on May 12, 1969. It was *after* that proceeding had been concluded that Webster elected to waive trial by jury in No. 8006–R. His waiver of jury form was executed on May 12, 1969, and it was stipulated that Webster was initially sentenced on the bail jumping charge before he was interrogated as to his plea in No. 8006–R. Even if the dictum in *Pruitt* is given

its full impact, it would be inapplicable to Webster's case.

Nor do we agree that Judge Merhige was, in fact, prejudiced by reason of his comments to Webster that "he [Webster] had a regular gang going" in connection with taking checks and forging them. The presentence report is not a part of this record and we cannot say that the remarks were not justified. The comment was not made until after the presentence report had been reexamined on May 26, 1969, following Webster's conviction on two counts and his acquittal on the first count which, incidentally, was the very charge concerning which Webster had made his abortive attempt to enter a plea of guilty on May 12, 1969. The remarks to Webster's court-appointed trial attorney made following sentencing in No. 8006–R in which he refers to Webster as a "thief" and "liar" are admittedly strong words but, again, we know nothing as to the contents of the presentence report and, in part at least, the trial in No. 8006–R supports the conclusions reached. Irrespective of the rather strong language used by Judge Merhige, it is abundantly clear that his feelings played no part in his judgment of guilt or innocence, as he found Webster not guilty on one count—the same count to which Webster had attempted to enter a plea of guilty.

In the heat of many trials, judges may make statements which, on paper at least, appear to indicate a personal feeling which may be arguably a suggestion of prejudice, but when the entire record is scrutinized we find justification for the words used and clear evidence of a completely fair trial. Such was Webster's case which was affirmed on appeal.

The motions to vacate the sentences imposed by Judge Merhige will be denied, and an order to this effect is this day being entered.