**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul DUHART, Defendant-Appellant.**

**No. 73-2570.**

United States Court of Appeals, Ninth Circuit.

May 8, 1974.

Rehearing Denied June 27, 1974.

Richard B. Mazer (argued), San Francisco, Cal., for defendant-appellant.

J. S. Obenour, Asst. U. S. Atty. (argued), Tacoma, Wash., for plaintiff-appellee.

Before MERRILL and KOELSCH, Circuit Judges, and MURRAY,* District Judge.

MERRILL, Circuit Judge:

On November 30, 1972, appellant Duhart, then an inmate of the United States Penitentiary at McNeil Island, Washington, forcibly seized and occupied the offices of the Classification and Parole Section of the prison administration. He did this by putting a knife to the throat of a woman who worked in the section and ordering all employees to leave, with the exception of his hostage and three other women. Appellant then ordered the four women to undress, striking two of them when they rebelled. He then forcibly had sexual intercourse with one. Seven hours after seizing the section he surrendered himself to prison authorities. In a two-count indictment he was charged with one count of rape and with one count of assault on the four women with intent to commit rape. Following jury trial he was adjudged guilty on both counts. He was sentenced to life imprisonment on the rape count, and to nineteen years, six months imprisonment on the assault count, the sentences to be served consecutively and both consecutive to the twenty-five year sentence for armed robbery he was then serving at McNeil Island. Seldom has a case been presented where the corpus delicti and the identity of the criminal were so indisputably established and where the proper course of justice was so apparent. The case should have presented no problems. Unhappily it presents many.

1. Appellant asserts error in denial by the district court of his motion for change of venue. He singles out one sentence in the district judge's order from the bench as indicating that incorrect standards were applied by the court. In our judgment the order, together with the complete colloquy preceding it, indicates that the court had correct standards in mind. The showing made by appellant in support of his motion was far from compelling and we find no abuse of discretion.

2. In furnishing appellant a pretrial list of witnesses, the Government failed to list one of the doctors it ultimately called. 18 U.S.C. § 3432 requires the furnishing of such a list in "capital" cases. The section under which appellant was convicted of rape, 18 U.S.C. § 2031, provides for the death penalty. It is conceded that as there prescribed the penalty is unconstitutional under Furman v. Georgia, 408 U. S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

When the doctor's testimony was offered appellant objected, and the district court ruled that after *Furman* rape is no longer a "capital offense" and that the furnishing of a list is therefore no longer required. That ruling is assigned as error.

We need not reach the merits of the question. In this case it is clear (indeed, it was admitted at the time of the objection) that while the name of the witness was absent from the list of witnesses tendered, appellant had knowledge of the Government's intention to call him and of the testimony the Government anticipated receiving from him. Hence no prejudice could possibly have resulted from any failure to comply formally with the statute.

3. When appellant had finally surrendered to prison authorities a prison doctor was summoned, who examined the woman who was raped. He took a vaginal "swab" or "smear." He testi-

* Honorable William D. Murray, Senior United States District Judge for the District of Montana, sitting by designation.

fied that he placed the specimens in preservative bottles and hand carried them to the laboratory of Tacoma General Hospital. At the hospital tests were performed on the specimens by the hospital pathologist.

Appellant objected to the testimony of the pathologist on the ground that the "chain of custody" of the specimens had not been sufficiently established. No one from the hospital had testified to receiving the specimens from the prison doctor. The prison doctor did not identify the bottles which the pathologist identified as those from which he had taken the samples tested.

Appellant relies on Novak v. District of Columbia, 82 U.S.App.D.C. 95, 160 F. 2d 588 (1947). In that case a sample of urine had been obtained from a drunken driver by a policeman. He had placed it in a bottle marked with his name and delivered it to the health department laboratories for analysis. A chemist from the laboratories testified as to the results of the analysis. The opinion states:

> "The police officer who secured the sample was present in court and testified to the manner in which he labeled the flask containing appellant's urine and how he placed his initials on the label. The chemist, when he testified, had beside him the bottle of urine on which he had made an analysis. But no effort was made to hand to the police officer, who was present in court, the bottle the chemist had used to see if he could identify it as the bottle he had labeled and initialed. There is missing a necessary link in the chain of identification."

160 F.2d at 589. The court of appeals reversed the conviction on this ground.

Here the missing link is supplied by the specimen bottle itself. Attached to it was a label with the prison doctor's name and the name of the woman examined, and the further information "11/30/72, vaginal smear." The pathologist testified that it was the regular course of business at the laboratory to label all specimens received in this fashion. Under 28 U.S.C. § 1732(a), the Business Records as Evidence Act, this foundation eliminates the need for testimony of the person who received the specimens and made out the label and passed the specimens on for testing—the "missing link" in the chain of custody. Under Gallego v. United States, 276 F.2d 914 (9th Cir. 1960), and Pasadena Research Laboratories, Inc. v. United States, 169 F.2d 375, 380–382 (9th Cir.), cert. denied, 335 U.S. 853, 69 S.Ct. 83, 93 L.Ed. 401 (1948), the chain of custody was, with the aid of § 1732, sufficiently established.[1]

■ 4. The court instructed the jury respecting the assault count as follows:

> "When an assault is done with the intent to commit rape, it would constitute a violation of the laws here alleged, whether or not the rape may be completed, and whether the assault be upon the person of the female intended to be raped, or upon the person of some other individual."

We agree with appellant that to constitute the offense the assault must be upon the person intended to be raped and that the instruction was erroneous.

■ The United States contends that in any event the error was harmless. Its theory is that assault was committed by appellant on all four women with the intent from the outset of raping one, and that he did not choose the one to be raped until after the assault had been committed. Thus, it is contended, all

---

1. In *Novak* the only "label" on the sample improperly received was the name of the policeman who took it. No attempt was made to lay the foundation necessary to qualify under the Act. More importantly, since the label was made by the policeman, and not by the laboratory, even if it were a business record it could not stand in place of the crucial missing witness: the person who received the sample from the deliverer, on behalf of the laboratory.

four women were, at the time of assault, objects of appellant's rape intent.

The record certainly accommodates such a construction of the events. It does not compel it, however, and appellant tells a different story. According to him, he ordered the four women to disrobe not intending to rape them, but simply to make their escape more difficult. Though he denied any rape at trial, in light of the jury's determination he argues on appeal in this connection that the rape was impulsive. Never, he asserts, did he intend to rape anyone but the one actually raped.

We cannot say that the record disputes this beyond reasonable doubt. Under the erroneous instruction the jury could have found the charged assault to have been committed upon the other women despite a lack of intent to rape them; and as to the woman actually raped, what they could have found may have been a lesser included offense. The instruction, then, constitutes reversible error as to the assault count.

■ 5. Appellant assigns as error in sentencing the district judge's failure to call for and consider a presentence report, pursuant to Rule 32(c) of the Federal Rules of Criminal Procedure. The judge stated that he was relying instead on appellant's prison report, which was made available to counsel.

The ordering of a presentence report is discretionary. Where the defendant at the time of commission of the crime is a prison inmate, the judge's choice to rely on his prison report as a suitable alternative source of information does not in our judgment constitute abuse of discretion.

■ 6. It is clear from statements made by the judge that he had familiarized himself with the contents of the prison report during the course of trial. Appellant contends that since the judge treated the prison report as a presentence report his having read it prior to the jury's return of a guilty verdict was contrary to Rule 32(c)(1) of the Federal Rules of Criminal Procedure, and consti-

tutes reversible error under Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969). We cannot agree.

Rule 32(c)(1) provides:

"The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty."

Respecting this rule, the Supreme Court in *Gregg* stated:

"Rule 32 is explicit. It asserts that the 'report shall not be submitted to the court * * * unless the defendant has pleaded guilty or has been found guilty.' This language clearly permits the preparation of a presentence report before guilty plea or conviction but it is equally clear that the report must not, under any circumstances, be 'submitted to the court' before the defendant pleads guilty or is convicted. Submission of the report to the court before that point constitutes error of the clearest kind.

Moreover, the rule must not be taken lightly. * * * To permit the *ex parte* introduction of this sort of material to the judge who will pronounce the defendant's guilt or innocence or who will preside over a jury trial would seriously contravene the rule's purpose of preventing possible prejudice from premature submission of the presentence report."

394 U.S. at 491–492.

In our judgment the rule should not be made to apply to a prison report, even though the judge chooses to treat it as an informational substitute for a presentence report. *Gregg* simply requires literal compliance with Rule 32, a rule concerned with presentence reports only and designed with a view to their particular purposes. The rule does not purport or seem to be an effort to assure

ignorance on the part of a judge in general. There are many decisions bearing on procedures to be followed in a particular trial that may require the judge to inform himself as to a defendant's background, mental and emotional state, or tendencies toward violence. This would seem to be particularly true of a prison inmate. So long as information for any purpose comes from sources other than the presentence report the rule of *Gregg* and Rule 32 in our judgment have no application.

■ 7. Appellant challenges the sentence rendered by the district judge. In opening brief on appeal it is asserted:

"[T]he record of the sentencing hearing clearly reflects that the trial judge's emotional involvement with the case and his personal acrimony towards the appellant overcame his duty and even his ability to exercise judicial discretion in imposing sentence."

The remarks of the judge to which appellant refers are set forth in the margin.[2] We agree with appellant that they require resentencing.

The United States opposes resentencing contending that a reading of the entire sentencing transcript shows that the judge was giving full and dispassionate consideration to all relevant factors and that the resulting sentence was not the result of an undisciplined and unjudicial surrender to hot blood.

It may be noted, however, that surrender to the desire to speak one's mind, as occurred here, suggests that the capacity for discriminating judgment in other respects may also have been lacking.

In any event the question of judicial qualification or disqualification is not dispositive of the question whether sentence may stand; nor is the question one of prejudice. This judicial act has been tainted by the manner of its performance. That the sentiments expressed would be widely shared, if not applauded, is no justification. A lecture of this sort in our view is an abuse of judicial authority. It has no place in the sentencing process.

Sentence on both counts is vacated.

Judgment of conviction of assault with intent to commit rape on count I is reversed, and the matter is remanded for new trial.

Judgment of conviction of rape on count II is affirmed, and the matter is remanded for resentencing.

---

2. "Now I suppose that with my knowledge of what goes on in the institution, and I have a lot of knowledge about that because I have been over there many times, they have their own brand of justice, you know about that, they don't have trials in the institution when they have a complaint against somebody, do they?

THE DEFENDANT: No, sir.

THE COURT: They take the law into their own hands, so to speak. I suppose that I could send you back over there and ask the warden just to keep hands off and let the inmates, and I am sure there are a lot of inmates over at the institution who are very unhappy over what you did here, aren't they?

THE DEFENDANT: Yes, sir, that's right; yes.

THE COURT: There are lots of them who are very unhappy over what you did here. But of course that isn't my province to do that. There are other things that I have thought about, I could take the robe off, and I was a man before I was a judge, and you have heard the expression, every man has, they ought to cut something out, you know what I am talking about.

THE DEFENDANT: Yes, sir, I understand, your Honor.

THE COURT: But it is not my province to resort to something like that; or to lock the doors and call the husbands of these four women down here and put you and them in here. But that isn't what I can do. There are all kinds of alternatives, but I have the unhappy position of wearing this robe, which incidentally I don't wear to bed with me, so I have to impose a penalty."