**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Danny John MONTECALVO,
Defendant-Appellant.**

**No. 75–1125.**

United States Court of Appeals,
Ninth Circuit.

March 15, 1976.

Lawrence R. Horn, San Francisco, Cal., for defendant-appellant.

J. S. Obenour, Asst. U. S. Atty., Tacoma, Wash., for plaintiff-appellee.

OPINION

Before HUFSTEDLER and CHOY, Circuit Judges, and REAL,* District Judge.

HUFSTEDLER, Circuit Judge:

Montecalvo appeals from his conviction for bank robbery. Only one of the three issues on appeal requires discussion: Did the district court violate Rule 32(c)(1) of the Federal Rules of Criminal Procedure by reading, prior to Montecalvo's conviction, material presented by the probation service to assist the court in sentencing?

On the afternoon of Montecalvo's arrest, he appeared before a federal magistrate and indicated that he wanted to waive indictment and enter a guilty plea. His lawyer promptly asked the probation and parole office to collect any material that it had about Montecalvo and to present the file to the district judge. The office complied, and, on the same afternoon gave the court a file containing records of Montecalvo's prior convictions, his prison records,

---

* Honorable Manuel L. Real, United States District Judge, Central District of California, sitting by designation.

and some information relating to the offense with which he was charged. The file was not formally denominated a presentence report.

When Montecalvo appeared before the district court the following morning, he entered a guilty plea, but during his Rule 11 interrogation, he withdrew his plea, and the court vacated it. The district judge to whom the file had been delivered and who conducted the Rule 11 interrogation presided over the ensuing jury trial that ended with Montecalvo's conviction.

Rule 32(c)(1) then provided:

"The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty." [1]

*Gregg v. United States* (1969) 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442, teaches strict adherence to Rule 32(c)(1):

"Rule 32 is explicit. It asserts that the 'report shall not be submitted to the court . . . unless the defendant has pleaded guilty or has been found guilty.' This language clearly permits the preparation of a presentence report before guilty plea or conviction but it is equally clear that the report must not, under any circumstances, be 'submitted to the court' before the defendant pleads guilty or is convicted. Submission of the report to the court before that point constitutes error of the clearest kind.

"Moreover, the rule must not be taken lightly. Presentence reports are documents which the rule does not make available to the defendant as a matter of right. There are no formal limitations on their contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged. To permit the *ex parte* introduction of this sort of material to the judge who will pronounce the defendant's guilt or innocence or who will preside over a jury trial would seriously contravene the rule's purpose of preventing possible prejudice from premature submission of the presentence report. No trial judge, therefore, should examine the report while the jury is deliberating since he may be called upon to give further instructions or answer inquiries from the jury, in which event there would be the possibility of prejudice which Rule 32 intended to avoid. Although the judge may have that information at his disposal in order to give a defendant a sentence suited to his particular character and potential for rehabilitation, there is no reason for him to see the document until the occasion to sentence arises, and under the rule he must not do so."

(394 U.S. at 491–92, 89 S.Ct. at 1136, 22 L.Ed.2d at 446; footnote omitted.)

Following *Gregg,* we held that a violation of Rule 32 is *per se* reversible error. (*United States v. Park* (9th Cir. 1975) 521 F.2d 1381.)

The district judge had read Montecalvo's file before the abortive plea hearing.[2]

1. A new version of Rule 32(c)(1) came into effect December 1, 1975.

"(c) Presentence Investigation.

(1) When Made. The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission of the court, the defendant waives a presentence investigation and report, or the court finds that there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record.

The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except that a judge may, with the written consent of the defendant, inspect a presentence report at any time."

Of course, the waiver provision of this rule is inapplicable to Montecalvo.

2. During the course of the hearing the following colloquy occurred:

"THE COURT: Did you know that the United States Probation Officer had a file

The Government contends that Montecalvo's file is not within Rule 32(c)(1) because it was a "parole file" rather than a "presentence report," relying on the fact that the file was not entitled "presentence report" and upon its reading of *United States v. Duhart* (9th Cir. 1974) 496 F.2d 941.

The label on the file has no significance. The content of the file is what counts. The purpose of Rule 32(c)(1) is to prevent, so far as possible, the injection into the guilt or innocence phase of the trial various kinds of information that would not be admissible as evidence to determine innocence or guilt and that could affect the fairness or the appearance of fairness of that determination. Rule 32(c)(1) is another example of the means that we use to try to avoid convicting or appearing to convict a defendant for being a bad person instead of convicting him solely for committing the crime with which he has been charged. The appearance of fairness is as important as fairness-in-fact in maintaining confidence in the administration of justice in the minds of the public and of the accused. Under Rule 32(c)(1), it is immaterial whether any judge can and has totally disregarded prejudicial information in a presentence report that he has read before the conclusion of the guilt phase of the trial. The Rule is a preventive device to avoid any appearance of unfairness.

The term "presentence report" as used in Rule 32(c)(1) is not a term of art. It is a

shorthand expression intended to encompass any report that contains the kind of information described in Rule 32(c)(2),[3] designed to help the judge in sentencing and excluded from the guilt determination phase of the case by reason of its unreliability or, regardless of its reliability, by reason of public policy considerations deemed of greater moment than a determination of a particular defendant's guilt. It is not possible, even if it were desirable, to prevent the judge who tries the case from obtaining a lot of information about a defendant that would routinely appear in a presentence report but that could not be brought to a jury's attention. For instance, information about a defendant's family, his financial condition, his prior criminal record, and other details about his background are often necessarily disclosed in proceedings to fix bail and in other pretrial proceedings.

Rule 32(c)(1) should be construed both practicably and in keeping with its spirit. To these ends, we read "presentence report" in Rule 32(c)(1) to mean any report submitted to the judge who presides during the guilt phase of the trial that contains information of the kind generally described in Rule 32(c)(2) that was not properly disclosed during the course of trial or during any pretrial proceedings in the case.

Montecalvo's file is a presentence report as thus defined. It contained his prior criminal record, his prison report with all its attendant data, and additional information

---

jacket that included information concerning you while you were at the United States Penitentiary at McNeil Island that was furnished to me today, wherein it was stated that you wished to be sentenced today, did you know that?

THE DEFENDANT: Yes, sir.

THE COURT: When I get that information, —of course prior to the time I hear a plea, I am not supposed to know the background of the man; I do that in escape cases, but not generally in this type of case, but it happens quite frequently, on account of requests from the defendants."

**3.** The version of Rule 32(c)(2) in effect at the time of appellant's hearing read:

"(2) Report. The report of the presentence investigation shall contain any prior criminal record of the defendant and such information

about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court. The court before imposing sentence may disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation and afford an opportunity to the defendant or his counsel to comment thereon. Any material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the government."

The current Rule 32(c)(2) omits the final two sentences, a change irrelevant for present purposes.

relating to the offense charged. None of this material had been disclosed during the abbreviated pretrial proceedings in this case.

Our definition of "presentence report" does not conflict with the holding in *United States v. Duhart, supra,* 496 F.2d 941, that the prison report there considered was not a presentence report within the meaning of Rule 32(c)(1). *Duhart* did not define "presentence report," nor did it describe the contents of the prison report in question. The opinion does suggest that the information was of the kind that should have been properly before the court for pretrial purposes. (496 F.2d at 946.) However, some of the broad language in the dicta gives sustenance to the Government's argument that no document that is not labeled "presentence report" fits Rule 32(c)(1). We decline to support the dicta because if it were encouraged to flower, the beneficent purposes of Rule 32(c)(1) would be seriously impaired. The meaningless quality of labeling is illustrated by this case. The district judge called Montecalvo's file a "file jacket." The probation officer called it "file material." The appellant's lawyer called it "parole and probation officer's records." On appeal, the Government says it was a "parole file."

The Government argues that Montecalvo cannot complain about the violation of Rule 32(c)(1) because he has shown no prejudice from the violation and because, through his attorney, he requested submission of the report to the judge in order to fulfill his then intent to plead guilty. The *per se* rule of *United States v. Park, supra,* 521 F.2d at 1383, n. 1, forecloses the first argument. The second requires discussion.

Nothing in the record suggests that Montecalvo intended to let the district judge read the presentence report if he was not then facing sentencing. True, the district judge cannot be faulted in preparing himself for a supposed immediate sentencing. But neither can Montecalvo be faulted or foreclosed when his anticipated guilty plea collapsed, and the judge who read the report thereafter presided over his trial. He cannot be charged with any waiver under these circumstances,[4] and the elements of estoppel do not exist. The Government suffered no detriment caused by Montecalvo's request. The detriment, if any, was caused by the aborted plea and by the failure thereafter to transfer the case for trial to another judge.[5]

REVERSED.

REAL, District Judge (dissenting):

I dissent.

I do not read *Gregg v. United States,* 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), as creating or requiring a *per se* rule of reversal.

Assuming that the majority's analysis of the facts is correct, the reasoning fails. The trial judge was not the trier of fact in this case. That was left to a jury determination, so we need not address the majority's concern that there might be occasion for "injection into the guilt or innocence phase of the trial various kinds of information that would not be admissible as evidence to determine innocence or guilt." Nor are we concerned that the facts of this case present a concern "to try to avoid convicting or appearing to convict a defendant for being a bad person instead of convicting him solely for committing the crime with which he [is being] charged." The record discloses nothing that could support these concerns.

The reasoning behind the use of a *per se* rule in this instance involving former Rule 32(c)(1) bears no relation to the reality of the criminal trial process. There are numerous instances in which a district judge will be informed of the past deeds of a

---

4. Since the 1975 amendment to Rule 32(c)(1), the difficulty can be obviated by obtaining the defendant's written consent to the court's inspecting a presentence report at any time. *See* n. 1, *supra.*

5. While this case was pending on appeal, the district judge who tried the case died. Any new trial will therefore be before a judge who has not seen Montecalvo's presentence report.

defendant before trial. Facts can come to a judge's attention in pre-trial proceedings such as motions to suppress, reduction of bail, or for discovery.[1] There is no rule that a trial judge must disqualify himself after presiding at these proceedings. To require a *per se* rule of reversal in the case of a judge reading a pre-sentence report, while not so requiring in the other situations, is logically inconsistent.

The majority notes in support of its decision that "[t]he appearance of fairness is as important as fairness-in-fact in maintaining confidence in the administration of justice in the minds of the public and of the accused . . ." The use of facile phrases such as this obscures the real impact of the holding. Surely public confidence in our judicial system will not be enhanced by a decision in which a defendant must be re-tried because of what is conceded to be a vague possibility of prejudice on the part of the district judge. As to the accused's confidence in the criminal system, it must be noted that it was at *his* explicit request—after notifying the Court of his proposed guilty plea—that the district judge looked at the report before the guilty plea was to be entered.[2] To allow a defendant to engineer his own reversal by requesting such action and later changing his mind can only serve to make the judicial process appear ridiculous in his eyes.

The holding of the majority points up the folly of creating *per se* rules that act as an insult to the intelligence of lawyers and judges. A careful reading of the record herein discloses that both the appearance of fairness and fairness-in-fact were scrupulously maintained by the trial judge.[3] This is a case for the classic application of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The fact that the issue upon which the majority would now reverse this conviction—on what can best be described as an insignificant technicality—was not raised in the appeal and was injected by the Court itself after submission of the matter only adds to the persuasion that the error, if any, was harmless beyond a reasonable doubt.

I would affirm the conviction.

---

1. See *Webster v. United States,* 330 F.Supp. 1080, 1086 (E.D.Va.1971); *United States v. Duhart,* 496 F.2d 941, 945–46 (9th Cir. 1974). Facts concerning the defendant would come to the trial judge's attention if he accepted a guilty plea on some counts and sentenced the defendant on them before trying the other counts, or if the trial judge had sentenced a defendant following conviction and shortly thereafter had to try the same defendant on other charges. Indeed, in the *Gregg* case itself the trial judge had previously read a comprehensive psychiatric report in determining the defendant's competence to stand trial. This report, which was three times as long as the pre-sentence report, contained every item which the trial judge adverted to in the presentence report when he sentenced the defendant.

2. I cannot distinguish the reports presented to the trial judge in *Duhart* (supra Note 1) from those given to the trial judge here.

3. Perfection is always sought but never attained. Our jurisprudence has recognized this human inability and has consequently required only that a defendant be afforded a fair trial— not a perfect one.