**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald Elroy GOODRICH, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Rex LeFEVRE, Defendant-Appellant.**

**Nos. 73-2633, 73-2556.**

United States Court of Appeals, Ninth Circuit.

March 8, 1974.

Richard J. Dowdall, Robert A. Schuler (argued) Johnson, Hayes & Dowdall, Ltd., Tucson, Ariz., for defendant-appellant in 73–2633.

Fred T. Scanlan (argued) Scanlan, Schiesel & Jurkowitz, Tucson, Ariz., for defendant-appellant in 73–2556.

Sarah Ann Bailey, Asst. U. S. Atty. (argued), William C. Smitherman, U. S. Atty., Ann Bowen, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before BROWNING and WALLACE, Circuit Judges, and WILLIAMS,* District Judge.

## OPINION

SPENCER WILLIAMS, District Judge:

Defendants Goodrich and LeFevre appeal from a conviction by a jury of conspiring to transport in foreign commerce an aircraft knowing the same to be stolen. 18 U.S.C. § 2312.

Defendants were initially charged with flying a stolen piper Axtec from Tucson, Arizona to Sonora, Mexico on June 2, 1972. Subsequent to this indictment their counsel discussed a disposition of the charge with the prosecuting Assistant United States Attorney. Although the briefs differ on this point (appellants assert that the AUSA prom-

* Honorable Spencer Williams, United States District Judge, Northern District of California, sitting by designation.

ised "if you get Mr. LeFevre out of Mexico, I will dismiss the case," and the appellee asserts only that the AUSA promised " . . . if I become convinced the defendant is innocent of the charge I will seek to have the indictment dismissed.") an agreement was reached that if LeFevre could prove he was not in Mexico the prosecutor would dismiss the case. LeFevre evidently proved through the testimony of six witnesses, that he could not have been in Mexico June 2. Thus on February 26, 1973, the government dismissed the indictment, indicating it had new information that the overt act had been committed June 3. Thereafter the grand jury returned a new indictment identical to the first except charging that the overt act occurred June 3. Prior to the trial, defendants filed motions objecting to the dismissal of the first indictment on the basis it was dismissed without their knowledge and requesting dismissal of the second indictment on the grounds that the United States had promised to dismiss the case upon the establishment of an alibi. Although the trial court's orders are not included in the record presumably these motions were denied.

During the trial several references were made to June 2 as being the date of the overt act. LeFevre presented alibi witnesses as to both dates. He testified that he placed his family on a commercial flight to Utah on the morning of June 2, making impossible his presence in Mexico on that date. He also testified and introduced telephone records to show that on the evening of June 2 he placed a call from his home in Tucson to his wife at his brother-in-law's home in Draper, Utah. This alibi testimony as to June 2 was never controverted.

In reliance however on the government charge that the overt act occurred on June 3, he elected to not call the additional six witnesses who would have further substantiated his presence in Tucson on June 2.

LeFevre's alibi evidence as to June 3 consisted of the testimony of one eye-witness, a Mrs. Bryson, and an entry in a church log which indicated he worked at the church on that date. It was argued in contravention of this alibi that the eye-witness could have been in error and that the entry in the log could have been entered at a later date. In fact, one rebuttal witness testified that LeFevre had informed her of his plan to do so.

The judge instructed the jury in pertinent part that "The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged." Appellants raise two points on appeal: (1) the second indictment should have been dismissed since it breached the promise of the government to dismiss the case; (2) the trial court's instruction on the time of the offense was in error in light of a possible alibi.

■ The government contends that the appeal of the first issue should be dismissed without consideration of the merits, in accordance with the holding in United States v. Martinez, 429 F.2d 971, 976 (9th Cir. 1970). In *Martinez* the defense alleged without specific contentions or record references that the co-defendant's counsel's opening remarks were prejudicial to the defendant. While we agree with *Martinez* that such general allegations do not warrant consideration on appeal, there are in this case specific contentions and record references which raise important questions of law.

Turning to the merits, appellants concede there is no law directly on point but analogizes their situation to a series of cases enforcing breached government "deals" where defendants were promised dismissals, immunity or leniency. In State v. Davis, 188 So.2d 24 (Fla.App. 1966), the court enforced a promise not to prosecute if the defendant submitted himself to a polygraph test which showed him to be telling the truth concerning his innocence. The test exoner-

ated the defendant, and the appellate court upheld the trial court's dismissal of the attempted prosecution finding that "[t]his was a pledge of public faith —a promise made by state officials— and one that should not be lightly disregarded." Also, in Smith v. United States, 321 F.2d 954, 955 (9th Cir. 1963), the court held that a government promise that a plea to a second charge would not result in a sentence longer than that already imposed for the first plea, and that the sentences would run concurrently, was violated when the defendant was sentenced to twice the time on the second plea.

■ These cases along with several others similarly cited by the appellants (concerning breached promises of immunity, or fraudulently induced guilty pleas) all generally stand for the proposition that when the prosecution makes a "deal" within its authority and the defendant relies on it in good faith, the court will not let the defendant be prejudiced as a result of that reliance.

In this case there seems to be some question as to what, exactly, the bargain was.

■ Even if the Assistant United States Attorney promised, as the appellants assert " . . . if you get Mr. LeFevre out of Mexico, I will dismiss the case," it is not at all clear that the defendants did "get Mr. LeFevre out of Mexico." The appellants merely convinced the government that Mr. LeFevre was not in Mexico on June 2, and since further investigation put him in Mexico June 3, prosecution of an overt act on that date would not abrogate either interpretation of the agreement.

This case is also distinguishable from those cited by the appellants in that here they did nothing to jeopardize themselves or waive any rights in reliance on the prosecution's promise. They merely came forth with positive, beneficial evidence which established LeFevre's alibi for June 2 and did not waive their Fifth Amendment rights such as by submitting themselves to polygraph tests or entering guilty pleas.

The question of whether the trial court committed error in giving the challenged instruction requires a careful review of the full record.

The government contends that an alibi defense was not alleged and an alibi instruction was not requested. There was a timely objection to the instruction given, however, and regardless of whether an alibi defense was ever alleged, there can be no question that an alibi defense was raised and that the defense was based on that premise. Appellant cites ample state authority both old and new for the proposition that when an alibi defense is asserted the time of the crime is extremely material, since any variance in time proved and the time the jury is allowed to find deprives the defendant of his alibi defense. And it is appellant's position that under the court's instruction the jury could have found that the overt act was committed June 2, rather than June 3.

In People v. Brown, 196 Cal.App.2d 684, 9 Cal.Rptr. 53 (1960), the court found that an instruction to the jury that the date of the alleged crime (indecent exposure) was not important as long as it was within the one year statute of limitations even though the defendant asserted an alibi defense for the specific dates charged, was misleading and confusing. Quoting from People v. Waits, 18 Cal.App.2d 20, 21, 62 P.2d 1054 the court said, " 'In light of the appellant's alibi defense, the time the alleged offenses were committed became material, and it was the duty of the trial court to limit the jury in its consideration of the evidence to the period which the prosecution selected as the time for the commission of the offenses.' " The court in *Brown*, also stated that "When a defense of alibi is interposed and an alleged offense is so narrowed as in this case, the date and even the hour may become important." *Supra*, 9 Cal.Rptr. at 55.

In Commonwealth v. Boyer, 216 Pa. Super. 286, 264 A.2d 173, 176 (1970), the court found, even without objection below, that charging a jury so that they

could find the offense (burglary) was committed on December 27, 28, or 29, when the charge stated December 28 and the alibi was for December 28, but all the proof indicated December 27 was clearly reversible error. The court stated, "It has been uniformly held in other jurisdictions that where the state has alleged and relies on a fixed date and the defendant also relies on that date in preparing his defense, it is error to permit a jury to find that the crime was committed on another date, time being of the essence where the defense is alibi." [See also State v. Waid, 92 Utah 297, 67 P.2d 647 (1937), which holds that an "on or about (a certain date)" instruction is error when an alibi is interposed.]

The government contends and the appellant concedes, that absent the alibi defense problem, there is no reversible error should there be some variance between the date of the crime as charged and the date as proved. Brulay v. United States, 383 F.2d 345 (9th Cir. 1967); Riley v. United States, 411 F.2d 1146 (9th Cir. 1969). In other words, had the government in the instant case alleged June 2 and proved June 3 as the date of the overt act, or vice versa, there would be no claim of error but for the alibi defense. And the most cogent argument for a different rule here is that it would be grossly unfair to have the government present this case as to a specific date, allow the defendant to structure his defense as to that certain date, and then permit the jury to find that the crime had been committed on some other date. Commonwealth v. Boyer, *supra.*

In the instant case the government prosecuted and the appellants defended on the proposition that the overt act was committed on June 3. LeFevre's claimed prejudice is that the jury might have found that he committed the crime on June 2, and that he could have closed that door by using the six witnesses he had been misled into not calling.

We are not persuaded that the jury could have concluded the overt act might have occurred on June 2. Not only was the alibi never challenged, but in her argument to the jury, the prosecutor flatly conceded its validity.[1] Furthermore, the great weight of the evidence and argument was directed at June 3[2] and the issue was simply whether the jury accepted the government's evidence or defendant's LeFevre's alibi.

■■ If the giving of the challenged instruction was error, it was harmless error for it is obvious that as the sole judge of the facts and the credibility of the witnesses, the jury rejected the June 3d alibi. Since such a result cannot be here disturbed unless it is shown to be clearly contrary to any substantial evidence (United States v. DePalma, 414 F.2d 394 (9th Cir. 1969) the Judgment is affirmed.

1. In her opening argument the prosecutor stated:

"Now it is in evidence that Mr. LeFevre's family flew to Salt Lake City in the morning of June 2d. And Mr. Kenaston was told that LeFevre's family was gone. He was in the house. He knows they were gone . . . ."

2. In her closing argument the prosecutor stated:

"Now, defense counsel made much of the fact that there was another date on a prior indictment. And I ask you, Ladies and Gentlemen, when defense counsel convinces me on a prior occasion that I am wrong on the date that I believe the aircraft was taken and I have determined June 3d to be the date by virtue of the investigation, what kind of an attorney would I be if I did not change the date to the one that I believe was the proper date . . . ."

Appellant's attorney also accepted the June 2d alibi as proved and the June 3d alibi as critical. He said:

"Now it's been established that they (the family) went to Salt Lake City on Friday, the 2d day of June. This conversation, Mrs. Bryson said, took place (at the Church) on Saturday, the 3d day of June. Mr. LeFevre's name appears in that book on Saturday, the 3d of June. Mrs. Bryson's name appears in that book on Saturday, the 3d of June . . . ."