**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Julio C. VALLE-VALDEZ, Defendant-Appellant.**

No. 76–1953.

United States Court of Appeals, Ninth Circuit.

March 8, 1977.

**912**

John L. Cleary, argued, Lewis A. Wenzell, Federal Public Defender, San Diego, Cal., for defendant-appellant.

Terry J. Knoepp, U. S. Atty., Douglas G. Hendricks, Asst. U. S. Atty., argued, San Diego, Cal., for plaintiff-appellee; Douglas G. Hendricks, Asst. U. S. Atty., San Diego, Cal., on the brief.

Before GOODWIN and WALLACE, Circuit Judges, and INGRAM,* District Judge.

WALLACE, Circuit Judge:

Valle-Valdez appeals his conviction of possession with intent to distribute 677 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). He contends that a jury instruction pertaining to conscious purpose to avoid learning the truth about the presence of the contraband was erroneous in light of *United States v. Jewell*, 532 F.2d 697 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 50 L.Ed.2d 1188 (1976), and that the error requires reversal. We agree and reverse.

* Honorable William A. Ingram, United States District Judge, Northern District of California, sitting by designation.

## I

Immediately prior to Valle-Valdez' arrest, a Border Patrol agent observed him driving an automobile westbound on Highway 98 approximately 25 miles west of Calexico. The car was traveling at 75 miles per hour, swerving and riding low in the rear. The agent stopped Valle-Valdez, who immediately exited from the automobile and walked to its rear. His demeanor was normal until he was asked to open the trunk, at which time he became noticeably nervous.[1] Valle-Valdez opened the trunk, revealing 302 kilo bricks of marijuana in plain view. He was then arrested. A customs agent drove the automobile to Calexico; while doing so, he noticed that the odor of marijuana permeated the passenger compartment and that the vehicle swayed and was difficult to control, due, in part, to the weight in the rear.

Valle-Valdez testified during the trial that a Pepe or Pablo Robles approached him in a bar in Mexicali and offered to pay him $100 if he would drive a car from Calexico to San Diego where he would park it at a bus depot and leave the keys in the ashtray. Valle-Valdez accepted. He testified that Robles paid him $100 in cash, directed him to pick up the automobile at a bank parking lot in Calexico, and advised him that the keys would be in the ashtray. Valle-Valdez maintained that he was completely unaware that the vehicle contained marijuana and did not even suspect that such was the case.

Without the benefit of *United States v. Jewell, supra*, which was decided two and one-half years later,[2] the district judge fashioned an instruction which he believed to be appropriate:

You may not find the Defendant guilty unless you find beyond a reasonable doubt that he knew marijuana was in the vehicle at the time that it was driven. Fact of knowledge, however, may be established by direct or circumstantial evidence, just as any other fact in the case. The government has the burden of proving beyond a reasonable doubt that the Defendant had actual knowledge that marijuana was contained in the vehicle. *It can meet that burden by proving beyond a reasonable doubt that the Defendant acted with a conscious purpose to avoid learning the truth of the contents of the vehicle.*

Valle-Valdez objected to the emphasized language.

## II

In *Jewell*, our court sitting en banc wrestled with two questions: whether and under what circumstances a conscious purpose not to find the truth could be equated with the knowledge required for conviction under section 841(a)(1). Relying on the Model Penal Code, we held that such knowledge could be established by showing either that the accused had positive knowledge of the presence of the contraband or that he acted "with an awareness of the high probability of the existence of the fact in question." 532 F.2d at 700–01, 704 & n.21.[3] Thus, actual or positive knowledge is not necessary to convict the accused if he was aware of a high probability of the crucial fact—even though he consciously or deliberately disregarded that probability in an effort to remain ignorant of the fact.

In the present case, the government contends that the challenged jury instruction is not inconsistent with *Jewell*. It points to

---

1. There was a conflict in the evidence on Valle-Valdez' reaction to the request to open the trunk. Regarding this, as well as all other conflicts, we take the evidence in a light most favorable to the prevailing party, the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Hood,* 493 F.2d 677, 680 (9th Cir.), *cert. denied,* 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974).

2. The tardiness of this appeal results from Valle-Valdez' own conduct. He jumped bail during trial and, until his recent apprehension, remained a fugitive.

3. We recognized, however, that an accused could not be convicted despite his awareness of the high probability of the presence of the contraband if he actually believed that the contraband was not present. 532 F.2d at 700–01, 704 n.21.

the fact that the trial judge, in drafting the instruction, relied on *Griego v. United States*, 298 F.2d 845, 849 (10th Cir. 1962), a case cited with approval by us in *Jewell*. 532 F.2d at 701–02 & nn.12 & 15. This argument is not persuasive because, although we approved the theory developed in *Griego*, we did not adopt its specific language. Rather, we stated that a proper jury instruction would direct the jury to convict only on finding beyond a reasonable doubt that the defendant was aware of the high probability that the vehicle carried contraband. 532 F.2d at 704 n.21.

■ Applying *Jewell*, we conclude that the instruction given in the present case was deficient. That instruction permitted conviction on proof "beyond a reasonable doubt that the Defendant acted with a conscious purpose to avoid learning the truth of the contents of the vehicle." As far as it goes, this instruction is correct. The error or deficiency lies in the instruction's failure to add that the defendant's "conscious purpose to avoid learning the truth" is culpable only if the jury also finds beyond a reasonable doubt that he was aware of the high probability that the vehicle carried contraband. A deliberate avoidance of knowledge is culpable only when coupled with a subjective awareness of high probability.

Because Valle-Valdez denied any knowledge or suspicion that contraband was in the automobile, a factual issue arose regarding his awareness of the high probability of the contraband's presence. That issue should have gone to the jury. The effect of the court's instruction was to keep the question from the jury and to create the possibility that Valle-Valdez was convicted for violating section 841(a)(1) even though he did not possess contraband "knowingly," as that word has been interpreted by us in *Jewell*. *See United States v. Short*, 493 F.2d 1170, 1172 (9th Cir.), *cert. denied*, 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275

(1974); *Peterson v. United States*, 344 F.2d 419, 427–28 (5th Cir. 1965); *cf. United States v. Henny*, 527 F.2d 479, 484 (9th Cir. 1975), *cert. denied*, 425 U.S. 991, 96 S.Ct. 2201, 50 L.Ed.2d 815 (1976).

## III

Determining that the instruction was deficient does not end our analysis, however. The issue remains whether the error requires reversal.

■ We are reluctant to order a retrial nearly four years after the initial trial—with the attendant risk of lost witnesses, fading memories and stale evidence—when the delay was wilfully instigated by the defendant. In the present case, Valle-Valdez jumped bail before a verdict was returned and remained a fugitive until his apprehension in 1976. Nevertheless, the government does not contend that we should deny a retrial because of the delay. We therefore do not reach that question and turn to the substantive issue regarding reversal.

■ Valle-Valdez timely and properly objected to the deficient instruction. We must reverse, therefore, unless the instruction is deemed harmless error.[4] *Compare United States v. Petersen*, 513 F.2d 1133, 1136 (9th Cir. 1975), *United States v. Henson*, 513 F.2d 156, 157–58 (9th Cir. 1975), *and United States v. Duhart*, 496 F.2d 941, 944–45 (9th Cir.), *cert. denied*, 419 U.S. 967, 95 S.Ct. 230, 42 L.Ed.2d 182 (1974), *with United States v. Henny, supra*, 527 F.2d at 484–85, *United States v. Davis*, 501 F.2d 1344, 1345 (9th Cir. 1974), *United States v. Goodrich*, 493 F.2d 390, 394 (9th Cir. 1974), *and United States v. Murray*, 492 F.2d 178, 198 (9th Cir. 1973), *cert. denied*, 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974). The standards guiding appellate determination of harmless error are variable, often confus-

---

4. In *Jewell*, the majority reviewed the challenged instruction under the plain error standard of Rule 52, Fed.R.Crim.P., because of the defendant's failure to object to the instruction on sufficiently specific grounds. 532 F.2d at 704, n.21. The dissenting judges believed that the objections were adequate to require review based upon the harmless error test. 532 F.2d at 707–08. In the present case, Valle-Valdez' objections were clearly adequate to trigger a review for harmless error.

ing and frequently left unarticulated. Basically, however, those standards are statements of the degree of certainty an appellate court must achieve regarding the effect of the error on the verdict. For example, under one standard, an appellate court reverses unless it is *more probable than not* that the error did not materially affect the verdict; under another standard, unless it is *highly probable* that the error did not materially affect the judgment.[5] Perhaps the most clearly articulated standard comes from *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), where the Supreme Court held:

> [B]efore a federal constitutional error can be held harmless, the [appellate] court must be able to declare a belief that it was harmless beyond a reasonable doubt.

*Id.* at 24, 87 S.Ct. at 828. Stated in perhaps more readily applicable terms, the *Chapman* rule does not require an appellate court to reverse unless there is a *reasonable possibility* that the error materially affected the verdict. *See Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *see also Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).[6]

■ Which standard an appellate court selects depends on the type of case on appeal—criminal or civil[7]—or on the type of error committed in the trial court—constitutional or nonconstitutional.[8] If the error in the present case was "a federal constitutional error," as that phrase is used in *Chapman*, we would of course be bound to apply the reasonable possibility test. An argument can be made that the deficient jury instruction violated the Fifth Amendment's due process clause inasmuch as the instruction permitted the jury to convict Valle-Valdez without finding beyond a reasonable doubt *all* elements of the statutory offense. *See generally Moore v. United States*, 429 U.S. 20, 97 S.Ct. 29, 50 L.Ed.2d 25 (1976); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Nevertheless, we do not believe that the Supreme Court contemplated such a broad scope for

---

5. *See* Saltzburg, *The Harm of Harmless Error*, 59 Va.L.Rev. 988, 1018–21 (1973); *see generally* R. Traynor, *The Riddle of Harmless Error* (1970).

6. The Supreme Court has held, however, that certain kinds of constitutional error require automatic reversal. *E. g., Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel); *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (impartial judge); *see Chapman v. California, supra*, 386 U.S. at 23 n.8, 87 S.Ct. 824 and *id.* at 42–45, 87 S.Ct. 824 (Stewart, J., concurring).

Also, for a very narrow category of pornography cases, the Supreme Court has articulated the following standard:

> In the unusual posture of this case, in which petitioners agree that the challenged instruction was proper at the time it was given by the District Court [*i. e.,* before *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)], but now seek to claim the benefit of a change in the law [brought about by *Miller*] which casts doubt on the correctness of portions of it, we hold that reversal is required only where there is a probability that the excision of the references to the "nation as a whole" in the instruction dealing with community standards would have materially affected the deliberations of the jury.

*Hamling v. United States*, 418 U.S. 87, 108, 94 S.Ct. 2887, 2902, 41 L.Ed.2d 590 (1974). *See United States v. Cutting*, 538 F.2d 835, 840–42 (9th Cir. 1976) (en banc).

7. Some commentators have argued for a single standard of appellate review for both criminal and civil cases. *E.g.,* 1 Wigmore, Evidence § 21 (3d ed. 1940); Traynor, note 5 *supra*, at 48. Professor Saltzburg, on the other hand, has argued vigorously that the standard for appellate review of error should complement the standard of proof at the trial level, *i.e.,* preponderance of the evidence, clear and convincing evidence or proof beyond a reasonable doubt. Thus, under his view, different standards for appellate review of error may be logically required depending on the type of case from which an appeal is taken. Saltzburg, note 5 *supra*, at 995–98.

8. *See* note 6 and accompanying text *supra*.

The constitutional error-nonconstitutional error distinction has been criticized by some, as has the distinction between constitutional errors requiring automatic reversal and those susceptible to treatment as harmless. *See* Saltzburg, note 5 *supra*, at 1025; Mause, *Harmless Constitutional Error: The Implications of Chapman v. California*, 53 Minn.L.Rev. 519 (1969); *see also* Note, *Harmless Constitutional Error*, 20 Stan.L.Rev. 83 (1967).

the term "constitutional error." Traditionally, the courts have viewed as "constitutional errors" those errors violating specific provisions of the Bill of Rights such as the self-incrimination clause, *Chapman v. California, supra,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, the confrontation clause, *Schneble v. Florida, supra,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340; *Harrington v. California, supra,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, and the exclusionary rule based on the Fourth Amendment prohibition against unreasonable searches, *United States v. Barclift,* 514 F.2d 1073, 1075 (9th Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 63 (1975). Errors in such matters as jury instructions, rulings on the admissibility of evidence where Fourth Amendment claims are not involved, and comments by counsel generally have been considered "nonconstitutional." We are not compelled, therefore, by the authority of *Chapman* to apply the reasonable possibility standard in the present case.

■ The generally accepted rule is that nonconstitutional errors are measured against the more-probable-than-not standard. *See United States v. Cutting,* 538 F.2d 835, 844 (9th Cir. 1976) (Hufstedler, J., dissenting); *see also Hamling v. United States,* 418 U.S. 87, 108, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), and cases cited there. We accept this rule as an appropriate and proper appellate test. A more rigorous standard, one necessarily resulting in more reversals, is not justified where the interests involved are not sufficiently important to merit explicit constitutional protection.

However, two cases in this circuit contain language which can be construed as suggesting that errors in jury instructions given in criminal cases are measured against the reasonable possibility standard. *United States v. Rea,* 532 F.2d 147 (9th Cir. 1976); *United States v. Duhart, supra,* 496 F.2d 941. In *Duhart,* the defendant was tried and convicted of rape and assault on four named women with intent to commit rape. The defendant, an inmate at a federal penitentiary, gained control of an administrative office by putting a knife to the throat of a woman and ordering all employees to leave, with the exception of his hostage and three other women. He ordered the four women to undress, striking two of them when they rebelled, and then raped one. This court found erroneous an instruction on the assault charge given at trial because it did not state that the assault must be upon the person intended to be raped. The government countered with the argument that the error was harmless in any event because the assault was directed towards all four women with the intent from the outset of raping one of them, although the choice of which one was reserved until after the assault had been committed. We stated that:

> The record certainly accommodates such a construction of the events. It does not compel it, however, and appellant tells a different story. According to him, he ordered the four women to disrobe not intending to rape them, but simply to make their escape more difficult. Though he denied any rape at trial, in light of the jury's determination he argues on appeal in this connection that the rape was impulsive. Never, he asserts, did he intend to rape anyone but the one actually raped.
>
> We cannot say that the record disputes this *beyond reasonable doubt.* Under the erroneous instruction the jury could have found the charged assault to have been committed upon the other women despite a lack of intent to rape them; and as to the woman actually raped, what they could have found may have been a lesser included offense. The instruction, then, constitutes reversible error as to the assault count.

496 F.2d at 945 (emphasis added).

In *Rea,* unlike *Duhart,* we refused to reverse the defendant's conviction. We held that an erroneous instruction was "logically harmless to defendant beyond any reasonable doubt." 532 F.2d at 149.[9]

---

9. Most Ninth Circuit decisions subsequent to *Duhart* holding erroneous jury instructions to be harmless error do not articulate the standard of review being applied. *United States v.*

██ In the present case, there is no need to resolve any inconsistency, if there is one, regarding the proper harmless error standard. Given the facts of this case, application of either the probability or the reasonable possibility standard results in reversal. Our review of the record convinces us that the erroneous jury instruction probably materially affected the verdict. Necessarily, therefore, there is a reasonable possibility that it had such an impact.

This does not mean, of course, that the jury, properly instructed, could not have found from the evidence presented the requisite awareness of high probability that the vehicle carried contraband. The evidence clearly would have justified such a finding. But because we deem it probable that the erroneous instruction materially affected the jury's deliberations and verdict, we hold that Valle-Valdez is entitled to a new trial.

REVERSED.

GOODWIN, Circuit Judge, concurring and dissenting:

I agree that the instruction given in this case some years prior to the decision of *United States v. Jewell,* 532 F.2d 697 (9th Cir. 1976) did not measure up to the requirements of that decision. However, I dissent from that portion of the majority opinion which holds that the error was prejudicial. The defendant demonstrated the harmlessness of the error by jumping bail and remaining a fugitive until after the law was changed.

I would affirm.

*Henny, supra,* 527 F.2d at 484; *United States v. Gutierrez-Espinosa,* 516 F.2d 249 (9th Cir. 1975); *United States v. Davis, supra,* 501 F.2d at 1345; *see also United States v. Goodrich, supra,* 493 F.2d at 394; *United States v. Murray, supra,* 492 F.2d at 198. A review of those cases strongly suggests, however, that a less rigorous standard than the reasonable possibility standard was used in determining that the error in the instruction was harmless.