**UNITED STATES of America,**
**Plaintiff-Appellee**

v.

**Keith SMEATON, Defendant-Appellant.**

**No. 84–1175.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 17, 1985.

Decided June 6, 1985.

Eb Luckel, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Robert Valencia, Valencia & Wong, Berkeley, Cal., for defendant-appellant.

Before CHOY, Senior Circuit Judge, FARRIS and BEEZER, Circuit Judges.

CHOY, Senior Circuit Judge:

On September 9, 1983, Keith Smeaton, appellant, was sentenced to two years imprisonment for wire fraud. Ordering that his British passport remain in the custody of the court, the judge freed Smeaton under a Voluntary Surrender Order requiring him to turn himself in on September 26, 1983. On September 26, Smeaton was granted an extension to October 11, 1983 but it was ordered that there would be no further stays. Smeaton obtained a new passport sometime between September 9 and October 11.

On October 11, Smeaton failed to report to court as required, traveling instead to Los Angeles to sell certain paintings. He then flew to England when he discovered that he would not be granted a further stay. In December, Smeaton reluctantly returned to the United States to what he thought was to be a meeting with an art buyer. Instead, Smeaton was arrested when he deplaned at LaGuardia. He was found to possess a return ticket to England and was traveling under an assumed name.

In March 1984, Smeaton was tried for bail jumping in violation of 18 U.S.C. § 3150. At the close of the government's case, Smeaton unsuccessfully moved for a judgment of acquittal on the ground that the government had failed to provide sufficient evidence that Smeaton's failure to appear was willful. At the close of trial, after having raised an insanity defense, Smeaton again unsuccessfully moved for a judgment of acquittal. After being erroneously instructed on the test of insanity, the jury found Smeaton guilty and he was sentenced to two years imprisonment, to run consecutively to his wire fraud sentence.

1) *First Motion for Acquittal: Sufficiency of Evidence at Close of Government's Case to Show Willfulness.*

Smeaton concedes that he was ordered to appear on October 11 and did not. However, he argues that the government failed to present sufficient evidence to show that his failure to appear was *willful,* an essential element of a § 3150 offense. *United States v. Wilson,* 631 F.2d 118, 119 (9th Cir.1980). This contention is without merit.

In *Wilson,* the government's only evidence consisted of a certified copy of the minutes of a court ordering the defendant to appear and stating that the defendant did not appear as ordered. We reversed the conviction on the ground that the government had failed to prove willfulness, saying that "[a] person who has been notified of his obligation to appear in court might fail to appear out of inadvertence or inability. A deliberate decision to disobey the law, therefore, cannot be found beyond a reasonable doubt merely from nonappearance and notice of obligation to appear." *Wilson,* 631 F.2d at 119.

Here, the government gave proof of willfulness that went far beyond the obviously insufficient evidence provided in *Wilson.* It presented evidence that not only did Smeaton fail to appear on October 11, but that he left the country and went to England instead. The government also

provided evidence that Smeaton remained in England and only reluctantly returned to the United States traveling under an assumed name and with a return ticket to England. Finally, the government proved that prior to October 11 Smeaton had obtained a new passport even though he had been allowed to self-surrender only on the condition that he leave his original passport in the custody of the court.

"Because willfulness is a state of mind, it rarely can be proved by direct evidence. Proof that an individual acted willfully ordinarily depends on inferences reasonably drawn from the evidence." *Wilson*, 631 F.2d at 119. All of the above evidence could lead a reasonable jury to conclude that Smeaton deliberately disobeyed the order intending to avoid incarceration by fleeing to England. The trial judge properly denied Smeaton's first motion for acquittal.

### 2) *Second Motion for Acquittal: Could a Reasonable Jury Find Smeaton Sane?*

■ Smeaton's key expert witness was Dr. Sikorski, who testified that Smeaton was suffering from a mental disease or defect which caused him to lack substantial capacity to conform his conduct to the requirements of the law. Once the defendant introduces evidence of his insanity, the government must prove beyond a reasonable doubt that the defendant was sane. *United States v. Henderson*, 680 F.2d 659, 661–62 (9th Cir.1982).

Smeaton contends that the government failed to sufficiently rebut Dr. Sikorski's testimony and thus his motion for acquittal should have been granted. Dr. Kessler, the government's rebuttal witness, testified that it was his opinion that the term mental disease or defect refers to abnormal mental conditions which are either psychotic in nature or rise to the severity of a psychosis. Dr. Kessler testified that Smeaton did not have any such psychotic condition and thus was not suffering from a mental disease or defect.[1]

Dr. Sikorski based his contrary opinion that Smeaton did have a mental disease or defect on his determination that Smeaton suffered from a "judgment disorder with mixed disturbances of emotions and conduct." But like Dr. Kessler, Dr. Sikorski felt that Smeaton was not suffering from any condition rising to the level of a psychosis. Thus, the crucial difference in the two doctors' testimony was that Dr. Sikorski, unlike Dr. Kessler, believed that the term "mental disease or defect" included disorders that were non-psychotic in nature.

This court declared in *United States v. Ortiz*, 488 F.2d 175 (9th Cir.1973), that "[t]he jury could properly weigh the opinions of both psychiatrists and resolve that conflict. In reviewing [the jury's] determination, we must view the evidence and all reasonable inferences in the light most favorable to the government. This standard of review extends to the issue of sanity and the credibility of the experts." 488 F.2d at 178 (citations omitted). Therefore, reviewing the evidence in a light most favorable to the government, we must find that the jury in this case could have reasonably believed Dr. Kessler's testimony and rejected Dr. Sikorski's opinion. *See United States v. Segna*, 555 F.2d 226, 229–30 (9th Cir.1977).

■ This function of the jury to resolve conflicts extends to the issue of what constitutes a mental disease or defect. "The definition of mental disease or defect is essentially a factual, medical question, not a legal issue. The court should not encroach upon the jury's function of resolving possibly competing psychiatric views of this definition." *Government of the Virgin Islands v. Fredericks*, 578 F.2d 927, 932 (3d Cir.1978); *see also Wade v. United States*, 426 F.2d 64, 71 (9th Cir.1970) (en banc).

■ In sum, given Dr. Kessler's opinion that Smeaton did not suffer from a mental disease or defect, a reasonable jury could

---

**1.** Dr. Kessler testified that, as a psychiatrist, he was not able to give an opinion as to whether a particular person has the capacity to conform his conduct to the requirements of the law.

have found Smeaton sane beyond a reasonable doubt and thus the motion for acquittal was properly denied.

### 3) *Erroneous Insanity Instruction*

The correct test of insanity in the Ninth Circuit is "whether a person, as a result of a mental disease or defect lacks substantial capacity to appreciate the wrongfulness of his conduct *or* to conform his conduct to the requirements of law." *United States v. Henderson*, 680 F.2d 659, 661 (9th Cir.1982) (emphasis added). The trial judge initially gave an instruction essentially in accordance with this test. At the end of his reading of that instruction, however, defense counsel interrupted saying, "your Honor," to which the trial judge replied:

> Excuse me. I misread that. Let me read that again. A defendant is legally insane if at the time of the crime charged, one, the defendant had a mental disease or defect. That's the first thing. And, secondly, that as a result of a mental disease or defect, the defendant did not have a substantial capacity to appreciate the wrongfulness of the conduct *and* to conform the conduct to the requirements of law. (emphasis added)

Defense counsel did not object. Subsequently, the trial judge rephrased his instruction in terms of the government's burden stating:

> The government must prove either that at the time of the crime charged the defendant did not have a mental disease or defect, or the government must prove that even if the defendant did have a mental disease or defect at the time of the crime charged, the defendant still had substantial capacity both to appreciate the wrongfulness of the conduct and to conform that conduct to the requirement of the law.

**2.** The government argues that the error was invited because defense counsel interrupted the judge after he had given an essentially correct instruction, and the judge then gave the erroneous instruction. On the other hand, defense counsel did not explicitly request the erroneous

Thus, the judge gave two conflicting instructions, only the latter being correct. When he gave the definition of insanity, he erroneously required a defendant to lack both the capacity to appreciate wrongfulness *and* the capacity to conform conduct to the law. While defense counsel failed to object,[2] such an error definitely amounts to "plain error" as it is clear that a defendant need lack only one of those capacities, not both, in order to be legally insane.

"The standard of 'plain error' ... goes only to the issue of reviewability and not to the issue of whether a reversal is warranted. Thus, an error unobjected to at trial may be so plain as to warrant review ... yet the error may be harmless and, therefore, not justify a reversal." *United States v. Wilson*, 690 F.2d 1267, 1274 (9th Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983). Therefore, we must now consider the likelihood that the plain error materially affected the verdict.

The Ninth Circuit has yet to definitively resolve the issue of the proper harmless error standard to apply to erroneous jury instructions in criminal trials. In *United States v. Valle-Valdez*, 554 F.2d 911 (9th Cir.1977), we declared that "[e]rrors in such matters as jury instructions ... have been considered 'nonconstitutional.' ... The generally accepted rule is that nonconstitutional errors are measured against the more-probable-than-not standard.... We accept this rule as an appropriate and proper appellate test." 554 F.2d at 916.

However, *Valle-Valdez* went on to note that "two cases in this circuit contain language which can be construed as suggesting that errors in jury instructions given in criminal cases are measured against the reasonable possibility standard." *Id.* In the end, the court declined to resolve the inconsistency, noting that under the facts of the case reversal would be required un-

instruction and the judge might well have done the same thing had defense counsel said nothing. However, we find it unnecessary to resolve this issue and dispose of the matter on another ground.

der either standard.[3] 554 F.2d at 917. Because we find that there is no reasonable possibility that the error materially affected the verdict, we need not determine which standard to apply.

Smeaton's insanity defense centered around Dr. Sikorski's testimony that Smeaton was suffering from a mental disease or defect that caused him to lack substantial capacity to *conform his conduct to the requirements of the law.* If the jury applied the erroneous conjunctive test, then even if they had accepted Dr. Sikorski's opinion, they would have probably found Smeaton sane because they most likely believed Smeaton had substantial capacity to *appreciate the wrongfulness of his conduct.*[4] Therefore, we must consider the probability that the jury applied the erroneous conjunctive test.

Counsel and the psychiatrists at trial centered on Smeaton's capacity to conform his conduct to the requirements of the law. Smeaton's ability to appreciate the wrongfulness of his conduct was not addressed to any significant degree. Both the prosecutor, in his closing argument, and the defense counsel, in cross-examination, stated that the only disputed issue in the case was whether Smeaton had the capacity to conform his conduct to the requirements of the law, not whether he could appreciate the wrongfulness of his conduct. It is therefore extremely unlikely that the jury actually applied the erroneous conjunctive test.

Moreover, the trial judge subsequently gave a correct instruction when he reformulated the test in terms of the government's burden. In conclusion, we find that

there is no reasonable possibility that the defect in the jury instructions materially affected the verdict.[5]

AFFIRMED.

---

**3.** Subsequent cases have taken widely varying positions. Some have adopted the more-probable-than-not standard, simply citing *Valle-Valdez. See, e.g., United States v. Rhodes,* 713 F.2d 463, 475 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983). Other cases, also citing *Valle-Valdez,* have applied the reasonable possibility test. *See, e.g., United States v. Herbert,* 698 F.2d 981, 986 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983). Finally, some cases have noted the uncertainty surrounding this question and have avoided resolving the issue. *See, e.g., United States v. Cusino,* 694 F.2d 185, 187 (9th

Cir.1982), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983).

**4.** Both psychiatrists gave testimony indicating their belief that Smeaton could appreciate the wrongfulness of his conduct.

**5.** After this case was submitted for decision on January 17, 1985, appellant filed a motion to add an additional ground for reversal to his argument on appeal. The motion, which was received by the clerk of this court on February 14, 1985 and ordered by this court to be filed on March 11, 1985, is denied.