[No. F005097. Fifth Dist. Sept. 13, 1988.]

THE PEOPLE,. Plaintiff and Respondent, v.
DAVID ANDERSON DUNCAN, Defendant and Appellant.

[Opinion certified for partial publication.*]

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through IV.

COUNSEL

Eric L. Henrikson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARTIN, Acting P. J.—Appellant, David Anderson Duncan, was charged by amended information with fifteen felony counts: four counts of sodomy in concert by means of force and violence in violation of Penal Code section 286, subdivision (d);[1] eight counts of oral copulation in concert

---

[1] All statutory references are to the Penal Code unless otherwise specified.

by means of force and violence in violation of section 288a, subdivision (d); one count of sodomy with a person under the age of fourteen by force and violence in violation of section 286, subdivision (c); and two counts of oral copulation by means of force and violence in violation of section 288a, subdivision (c). After jury trial, verdicts of guilty were returned as to all counts. Appellant was sentenced to state prison for a total term of 60 years. Appellant filed a timely notice of appeal.

FACTS

At a party for his ninth birthday on July 23, 1983, Richard met a man named David Kelly. A few days after the party, Richard started visiting Kelly at his home in Oildale at the insistence of Richard's mother. Kelly took the boy swimming, camping, to bike races and to the Magic Mountain amusement park.

Sometime between Richard's birthday and August 15, 1983, Richard went to Kelly's residence. Kelly barbecued some hamburgers. After they ate dinner, Kelly suggested Richard take a shower. After Richard did so, Kelly applied powder and lotion on Richard's body. At that time Kelly used a syringe to inject a substance into Richard's buttocks which made him sleepy. Richard's hands, arms and feet were then bound with rope. His hands and feet were tied together behind him. Richard was hung nude from a hook on the wall while Kelly committed oral copulation upon him. While Richard was still hanging from the hook on the wall, appellant arrived. The two men took the boy off the wall after which Kelly sodomized him. Using a Polaroid camera, appellant took photographs of Kelly performing these sexual acts upon the boy.

Sometime between August 15 and September 6, 1983, Richard's mother sent Richard to Kelly's house for a nap. When Richard arrived, Kelly made him take a shower and then get on Kelly's bed. Kelly applied powder and lotion to Richard's nude body. Appellant then arrived at a time when Kelly was orally copulating Richard. Kelly gave Richard an injection on this occasion also. Still nude, Richard was tied with ropes and hung on the wall. Richard's mother arrived and together Kelly and she removed Richard from the wall and put Richard in the bathroom with appellant. Appellant then sodomized and orally copulated the boy and placed his penis in the boy's mouth.

On another occasion, also between August 15 and September 6, 1983, Kelly tied Richard, hung him on the wall from a hook, and injected him, at which time appellant arrived. The two men untied the boy and at that time

Richard's mother arrived. Richard was again placed in the bathroom with appellant. Appellant again sodomized and orally copulated him.

Again, sometime between August 15 and September 6, 1983, Richard was at Kelly's house when appellant and a woman referred to as Gypsy arrived. Richard described Gypsy as tall and "real blonde." She was wearing a garment somewhat like a bathing suit and high heels. While she was there, appellant sodomized and orally copulated Richard and caused Richard to orally copulate appellant. Gypsy took pictures of these events using a video camera. Richard was given an injection on this occasion also. Kelly then forced Richard to orally copulate Gypsy. Appellant and Gypsy subsequently left together.

Richard's mother was James's babysitter. James was six years old at the time of trial. He had met David Kelly the previous year. Kelly befriended him and took him places. On one occasion while James was at Kelly's house, appellant injected the child by means of a syringe. James was then tied up and hung from a hook on the wall. Appellant sodomized him and committed acts of oral copulation upon him.

A syringe found at appellant's residence showed traces of a morphine derivative known as hydromorphone or Dilaudid as well as phencyclidine, caffeine and a cocaine product.

A 12-year-old boy by the name of Bill testified he was present at Kelly's house when Richard was abused by Kelly, Richard's mother and appellant.

Jimmy Smith, a police informant, testified on rebuttal he had talked with appellant three times while in custody during the month of June 1984. Smith testified appellant told him he was glad he had shaved off his beard "because the kid didn't recognize him"; that he was present when the boys were hung up, the injections given and pictures taken; that he had assisted Kelly in giving the boys injections in order to make them drowsy; that a VCR and Polaroid camera had been used; that Kelly had sodomized a boy; that Richard's mother had been there, being paid to allow Kelly to abuse her son; that appellant admitted the police found the syringe; and that appellant admitted being orally copulated by one of the boys.

*The Defense*

Appellant took the stand and testified on his own behalf. He admitted a casual acquaintance with Kelly, but denied ever having been in his house. He had seen Richard in the neighborhood but did not recall James or Bill. He never owned or rented a VCR and had once owned a Polaroid camera

but had lost it. He denied ever telling Jimmy Smith anything except those things he had learned from reading the police reports and from talking with Kelly while they were in jail.

Various witnesses testified they had never seen appellant with Kelly; they had never seen appellant in the company of children; they had never known appellant to possess a VCR or a Polaroid camera; and appellant had a good reputation for morality concerning children.

Three children of the same family testified investigating Officer Rutledge and Social Worker Colleen Ryan had convinced them to say they had been molested when it was untrue. The mother of these three children testified Officer Rutledge "bullied" her children when he interviewed them.

DISCUSSION

## I. ADMISSION OF THE "CONFESSION" FOR IMPEACHMENT PURPOSES

At the commencement of trial the prosecutor conceded the "confession" reportedly given by appellant to a police informant was inadmissible, as it was obtained in violation of appellant's Fifth and Sixth Amendment rights. The prosecutor did not seek to put the evidence on in the case-in-chief but sought to introduce the confession to impeach appellant, were he to testify. Ultimately, the trial court permitted the prosecutor to impeach appellant with the testimony of the police informant. Appellant urges reversal of his conviction on all counts claiming the contradictory prior statements made to the police informer should not have been admitted for impeachment purposes because they were obtained in violation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

In *People* v. *Disbrow* (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272], defendant was found guilty of one count of murder. At trial, defendant testified on his own behalf, claiming self-defense. Over his objection, the trial court admitted as impeachment evidence defendant's inculpatory statements made to a police officer in violation of defendant's *Miranda* rights. The Supreme Court reversed: "We therefore hold that the privilege against self-incrimination of article I, section 15, of the California Constitution precludes use by the prosecution of any extrajudicial statement by the defendant, whether inculpatory or exculpatory, either as affirmative evidence or for purposes of impeachment, obtained during custodial interrogation in violation of the standards declared in *Miranda* and its California progeny. Accordingly, we overrule *Nudd* and declare that *Harris* is not

persuasive authority in any state prosecution in California."[2] (*Id.* at p. 113, fn. omitted.)

*Disbrow,* decided on independent state grounds, was the unquestioned rule in California until the adoption of Proposition 8, the Voters' Bill of Rights, in June 1982. Thereafter, the People argued that *Disbrow* had been eliminated by the provisions of article I, section 28, subdivision (d) of the California Constitution which states in pertinent part: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding. . . . Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay. . . ."

Our several appellate courts thereafter were divided on this (*Disbrow*) issue until the Supreme Court filed its opinion in *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307] on February 1, 1988.

In *People* v. *May, supra,* the defendant, before trial, moved under *People* v. *Disbrow, supra,* 16 Cal.3d 101, to bar any use of his statements to the police on the ground that they were obtained in violation of his *Miranda* rights. Insofar as the motion sought to bar the prosecution from using statements in its case-in-chief, the motion was impliedly granted but denied as to impeachment in the following ruling: " 'It appears to the Court that under Proposition 8, the Federal law must be applied, and the Federal standard must be applied as to the use of statements in violation of the *Miranda* rule. [¶] In this case, . . . there was a specific affirmative statement by the defendant that he wished to take advantage of his rights; that is, have an attorney, and that is repeated later on in the conversation as well. No question that it did not comply with *Miranda* . . . . [¶] The Court does find that the statements were not coerced; that there is no indication of coercion in the statements by length of the interview, or by methods used, or promises made; that there was no indication that if he talked, there would be a deal, that he would get off better if he did. [¶] So the ruling of the court is that under *Harris,* using the federal test, they would be usable as impeachment testimony by the prosecution, if otherwise appropriately usable as impeachment testimony.' " (*People* v. *May, supra,* 44 Cal.3d 309, 313.)

After the ruling, defense counsel stated that defendant May would not testify under compulsion of the ruling. Counsel stated on the record the defendant did not wish to be subjected to the possibility of cross-examination on his statement made in violation of *Miranda. (Ibid.)*

---

[2] *People* v. *Nudd* (1974) 12 Cal.3d 204 [115 Cal.Rptr. 372, 524 P.2d 844]; *Harris* v. *New York* (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643].

■ The California Supreme Court determined that Proposition 8 was adopted by the voters to dispense with exclusionary rules derived solely from the state Constitution and abrogated the rule of *Disbrow, supra. (Id.* at p. 318.)

The federal rule which now serves as the standard in California was announced in *Harris* v. *New York, supra,* 401 U.S. 222, allowing impeachment by the defendant's prior statements taken in violation of *Miranda.* "As *Harris* explains, 'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. *But that privilege cannot be construed to include the right to commit perjury.* [Citations.]' (401 U.S. at p. 225 . . . , italics added.)" *(People* v. *May, supra,* 44 Cal.3d at p. 319.)

In *Harris* v. *New York, supra,* the defendant testified in his own defense and denied any intent to sell heroin to an undercover officer. He was then asked whether he made certain statements to the police. These statements were made in violation of *Miranda.* The trial judge instructed the jury that the statements attributed to the defendant could only be used in passing upon the credibility of the defendant and not as evidence of his guilt. The United States Supreme Court held this to be proper. (401 U.S. at pp. 223, 226 [28 L.Ed.2d at pp. 3-5].)

In *Harris,* the court permitted admissions to be introduced to impeach a defendant, but their introduction was "tolerated only because the jury had been instructed to consider the statements 'only in passing on [the defendant's] credibility and not as evidence of guilt.' [*Harris* v. *New York, supra,* 401 U.S. 222, 223 (28 L.Ed.2d 1, 3).]" *(New York* v. *Quarles* (1984) 467 U.S. 649, 683-684, fn. 6 [81 L.Ed.2d 550, 575, 104 S.Ct. 2626] (dis. opn. by Marshall, J.).)

In *Hinman* v. *McCarthy* (9th Cir. 1982) 676 F.2d 343, the defendant was tried and found guilty of murder in the first degree and assault with a deadly weapon. The trial court admitted for impeachment purposes a statement made by Hinman explaining his flight from the scene of the crime. The trial court admitted the statement despite the absence of proper *Miranda* warnings. The statement was deemed obtained in violation of the defendant's *Miranda* rights and was used in the trial to prove his guilt. In *Hinman,* there were no proper instructions advising the jury of the limited use of the statement. The Ninth Circuit Court of Appeals concluded the statement was improperly admitted and the error was not harmless beyond a reasonable doubt as required to prevent reversal under *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. *(Hinman, supra,* 676 F.2d at p. 349.)

In a dissenting opinion by Justice Hufstedler in *United States* v. *Basile* (9th Cir. 1978) 569 F.2d 1053, a similar distinction is made. (*Id.* at p. 1060, fn. 3 (dis. opn. by Hufstedler, J.).) However, the lead opinion determined that no *Miranda* violation occurred and, therefore, the question of the necessity of a limiting jury instruction was not addressed.

In *Oregon* v. *Hass* (1975) 420 U.S. 714 [43 L.Ed.2d 570, 95 S.Ct. 1215], the prosecution was permitted to admit items of evidence which impeached the defendant's testimony. However, in that case the jury was also admonished that the items of evidence were admitted solely on the issue of credibility. The admission of the evidence was held to be proper.

In *Duran* v. *Stagner* (N.D.Cal. 1985) 620 F.Supp. 803, the petitioner sought a writ of habeas corpus contending that instructing the jury that consciousness of guilt may be inferred from prior false and misleading statements impermissibly allowed the jury to consider a statement taken in violation of *Miranda* for a purpose other than evaluation of credibility of the petitioner. The United States District Court granted the writ stating: "To expressly allow the jury to consider such a statement as the one in issue here for any purpose other than credibility of the declarant goes beyond the permissible borders of the *Harris* holding. Even if the suspect instruction is 'icing on the cake' as suggested by respondent, it is apparent that it blazes a new trail.

". . . . . . . . . . . . . . . . . .

"The broadening of the exceptions to *Miranda* exclusion articulated in *Harris* and *Hass* by the giving of the instruction in issue amounts to constitutional error. Cf. *United States* v. *Valle Valdez,* 554 F.2d 911 (9th Cir. 1977).

"Such error requires reversal unless it appears beyond a reasonable doubt that the error was harmless, that is, that there is no reasonable possibility that the error materially affected the verdict. *Chapman* v. *California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Hinman, supra.*" (620 F.Supp. at p. 805.)

Thus, in light of *Harris,* and its progeny, and *People* v. *May, supra,* 44 Cal.3d 309, the California rule is no longer in doubt. If a defendant elects to testify in his own defense, he may be impeached by his prior inculpatory or otherwise contradictory statements, if any, even though such statements were obtained from defendant in violation of his *Miranda* rights. However, the federal rule clearly requires that where such statements are admitted, the trial judge must admonish and thereafter instruct the jury that such

statements may only be used in passing upon the defendant's credibility and not as evidence of his guilt.[3]

██ In the instant case, the jury was neither admonished nor instructed to limit the use of appellant's admissions to the issue of his credibility. The police informant testified appellant told him he was glad he had shaved off his beard "because the kid didn't recognize him"; that he was present when the boys were hung up on hooks at Kelly's residence and the injections were given and photographs were taken; that he had assisted Kelly in giving the boys injections in order to make them drowsy; that a VCR and Polaroid camera had been used; that Kelly had sodomized a boy; that Richard's mother had been there, being paid to allow Kelly to abuse her son; that appellant admitted the police found the syringe; and that appellant admitted being orally copulated by one of the boys.

Originally, respondent argued, inter alia, that assuming arguendo error occurred, any error resulting from this evidence was "not prejudicial." According to respondent's argument, the testimony of the informer related only one admission as to a particular act. The informer testified as follows: "He said that, the way he told me, he said that we went to Vietnam a lot and when he was in Vietnam, he was drunk a lot and had blackouts, and he didn't know what he was doing, but he did let one of the kids orally copulate him, suck his dick. That's all he did."

Our Supreme Court and inferior appellate courts have not specifically addressed the issue whether if a defendant elects to testify and the prosecution thereafter impeaches the defendant by un-Mirandized, prior contradictory statements, the trial court must sua sponte instruct the jury that such statements may only be used in passing upon the defendant's credibility and not as evidence of his guilt. (In *People* v. *May, supra,* 44 Cal.3d 309, the defendant elected not to testify.) However, in view of our Supreme Court's holding in *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744] and in *People* v. *May, supra,* we conclude the federal rule controls and in such instances the trial court must sua sponte give the limiting instruction.

In the instant case, all of the statements alleged to have been made by appellant to the informer were extremely damaging. If a trier of fact harbored any reservations of appellant's guilt, consideration of these admissions could remove all doubt from the mind of a reasonable juror and it cannot be reasonably asserted that the admission of these statements without qualification or limitation as to their use and consideration by the jury

---

[3] Compare *Richardson* v. *Marsh* (1987) 478 U.S. 1003 [95 L.Ed.2d 176, 107 S.Ct. 1702].

did not materially affect the verdict. (*Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].) In addition, the error was exacerbated by the trial court's giving of CALJIC No. 2.13, that a witness's prior inconsistent statements may be considered by the jury not only for the purpose of testing the credibility of the witness, but also as evidence of the truth of the facts as stated by the witness on such former occasion, and CALJIC No. 2.71, that a statement by a defendant which tends to prove his guilt when considered with the rest of the evidence is an admission and if the jury finds it to be true in whole or in part, they may consider that part which they find to be true. In effect, the jury was told defendant's alleged statements to the informer could be weighed and considered by them, with the remainder of the evidence, in resolving the ultimate question of guilt.

Thus, the verdict must be reversed as to all counts. Upon retrial, if appellant elects to testify on his own behalf, his admissions to the informer may be admitted for impeachment only with appropriate admonition and instruction to the jury.

### II.-IV.*

. . . . . . . . . . . . . . . . . . .

In view of our conclusions in part I of this opinion, the judgment is reversed on all counts and remanded for new trial.

Hamlin, J., and Best, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 8, 1988.

---

* See footnote, *ante,* page 613.