UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan RUBIO–VILLAREAL,
Defendant–Appellant.

No. 89–50655.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1990.

Decided March 13, 1991.

1496

Martha M. Hall, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Mary A. Schneider, Asst. U.S. Atty., argued; Nancy L. Worthington, on the brief; San Diego, Cal., for plaintiff-appellee.

Before REINHARDT and LEAVY, Circuit Judges, and KING, District Judge.[*]

SAMUEL P. KING, District Judge:

Juan Rubio-Villareal appeals his convictions for conspiracy to import 7.42 kilograms of cocaine, in violation of 21 U.S.C. §§ 952, 960, and 963 (Count 1); importation of 7.42 kilograms of cocaine, in violation of 21 U.S.C. §§ 952 and 960 (Count 2); conspiracy to possess cocaine for distribution, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 3); and possession of cocaine for distribution, in violation of 21 U.S.C. § 841(a)(1) (Count 4).

Appellant asserts several grounds for reversal. First, appellant argues that the evidence introduced at trial was insufficient to sustain a finding of guilt beyond a reasonable doubt. Second, appellant contends that the district court gave an improper jury instruction. Third, the appellant maintains that the district court abused its discretion in refusing to admit evidence from two proffered expert witnesses. And finally, appellant argues that the district court erred when it allowed the government to introduce evidence of a prior drug importation conviction and accompanying post-arrest statements.

We REVERSE the convictions as to Counts 1 and 3 because of insufficiency of the evidence and remand for DISMISSAL of those counts. We REVERSE the convictions as to Counts 2 and 4 because of the giving of an improper jury instruction and

---

[*] The Honorable Samuel P. King, Senior United States District Judge, for the District of Hawaii, sitting by designation.

remand for a NEW TRIAL or other proceedings consistent herewith.

*Facts*

At approximately 9:30 a.m. on March 9, 1989, appellant Rubio–Villareal approached the U.S. Customs primary inspection station at the San Ysidro Port of Entry. He was driving from Mexico into the United States in a pickup truck with a camper shell. He was accompanied by his twelve-year-old son, John, and an acquaintance, Jose Garcia.

Rubio–Villareal's behavior at the station caused the Customs Inspector to become suspicious. Rubio–Villareal repeatedly complimented the agent on her beauty during questioning. He initially did not respond to the agent's inquiries regarding the contents of the truck. Further, he claimed that he was driving his son, whom he claimed to be a United States citizen, to school in the United States. However, it was already late in the day for school, the boy's English was poor, and he had no citizenship documents and no birth certificate. The inspector also noticed that Rubio–Villareal was slouched down in his seat, staring at his steering wheel and making no eye contact with her. The inspector asked him to open the rear camper door, but he was unable to open the door with the key.

The inspector directed passenger Garcia to drive the truck to the secondary inspection station. After the truck had been moved, Rubio–Villareal and his companions went inside a building for interviews.

A narcotics detection dog alerted its handler to the area between the bed and cab. The officer saw a small false compartment wall. The compartment was well made to prevent odors from escaping easily, and to avoid easy detection by Customs agents knocking on the truck wall.

The agent broke into the compartment and found seven packages of cocaine. He restored the compartment and the camper shell to their original shape. Customs agents decided to surveil the vehicle in an effort to catch any contacts in the United States. Customs Special Agent Larry Latocki was assigned this duty.

Subsequently, Rubio–Villareal drove the pickup truck into the United States, dropped his friend at a trolley station, drove around for some time, made a few telephone calls and, at about 6:00 p.m., was picked up by someone, leaving the pickup behind in a parking lot. Rubio–Villareal returned to Mexico.

The pickup remained under surveillance in the parking lot until Rubio–Villareal returned with another person in a green car at about 10:00 p.m. After sitting in the lot for approximately an hour and a half, Rubio–Villareal drove the pickup to a nearby pay parking lot next to a Travelodge Hotel. He left the pickup in the lot, got back into the green car, and was driven to a pay phone where he placed a call. He then left the area in the car with the other person.

Agent Latocki maintained surveillance of the pickup truck, still loaded with drugs, continuously thereafter. On March 14, 1989, Rubio–Villareal returned to the Travelodge, paid the manager for parking fees of five dollars per day through the 15th, and said he would return the next day for his pickup. He failed to return on March 15, so on March 16, 1989, the manager, in cooperation with United States Customs, had the truck towed to a storage yard, whereupon the drugs were seized. The packages contained 7.3 kilograms of 91 percent pure cocaine with a street value estimated at 1.4 million dollars.

On March 16, 1989, Rubio–Villareal returned to the Travelodge and was referred to the towing yard for his truck. About a month later, on April 12 or 13, 1989, he arrived at the towing yard and was met by Agent Latocki, who was posing as an employee of the towing facility. Rubio–Villareal paid the towing fees and claimed the car had been his for several months, although the registration slip was not in his name and he had no pink slip. Latocki then identified himself as a federal agent and placed Rubio–Villareal under arrest.

## DISCUSSION

### I. Sufficiency of the Evidence

Appellant contends that the evidence adduced at trial was insufficient to convict him on any of the four counts.

■ Evidence presented at trial is sufficient to support a conviction if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Adler,* 879 F.2d 491, 495 (9th Cir.1988). In making this determination, the evidence and all the inferences from the evidence must be viewed in the light most favorable to the government. *United States v. Endicott,* 803 F.2d 506, 514–515 (9th Cir.1986).

### A. Possession Counts 2 and 4

Rubio–Villareal contends that the sole acceptable evidence of his drug possession was that he was the driver of a car in which drugs were hidden, and that this was an insufficient basis upon which to conclude that appellant knowingly possessed the cocaine.

■ However, there was other substantial evidence of his knowing importation besides the fact that he was the driver of the pickup truck. For the month following his border crossing, only he handled the truck and claimed it as his own. In addition, after his arrest, he fabricated a story to explain why he had left the pickup truck in a paid parking lot for an entire month. The jury could infer from this evidence that he was waiting to see if the coast was clear before returning for his vehicle.

■ Furthermore, even when a vehicle contains other passengers, it is reasonable to infer that the driver who had control of the car before the trip was the individual who made the necessary preparation to conceal the drugs in a secret compartment.[1] *United States v. Martinez,* 514 F.2d 334, 339 (9th Cir.1975). Exclusive dominion over the property or vehicle in which contraband is found is strong circumstantial evidence of possession. *United States v. Savinovich,* 845 F.2d 834, 837 (9th Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

Accordingly, the appellant's first contention fails.

### B. Conspiracy Counts 1 and 3

■ In order for this court to sustain a conviction for conspiracy, the government must have proved beyond a reasonable doubt three elements: (1) an agreement to accomplish an illegal objective; (2) coupled with one or more acts in furtherance of the illegal purpose; and (3) the requisite intent necessary to commit the underlying substantive offense. *United States v. Penagos,* 823 F.2d 346, 348 (9th Cir.1987); *United States v. Indelicato,* 800 F.2d 1482, 1483 (9th Cir.1986).

■ Although an agreement may be established circumstantially, *United States v. Indelicato,* 800 F.2d at 1483, a conspiracy cannot be upheld when there is no evidence that the accused conspired with others. *See United States v. Schorr,* 462 F.2d 953, 959–960 (9th Cir.1972) (conviction for conspiracy reversed where there was no evidence that defendant even knew alleged co-conspirator, had ever talked with him, had ever worked together in any way whatsoever, or had ever made an agreement with him).

■ Here, the first element of the *Penagos* test has not been met. There was no evidence offered at trial that Rubio–Villareal conspired with another person, or that there was any agreement to accomplish an illegal objective. No evidence was submitted to show the identity of any co-conspirator; no evidence was presented which tended to show a close relationship between Rubio–Villareal and a co-conspirator; no evidence was presented indicating frequent contacts between Rubio–Villareal and anyone else; no evidence was offered of the same modus operandi being used by Rubio–Villareal and some other co-conspirators; and there could be no finding as to

---

1. This argument is further bolstered in this case because we know a great deal about the other passengers. One was his young son, and the other was an acquaintance who testified at trial at Rubio–Villareal's own behest that he was simply given a ride partway to work that day.

the commonality of the acts of any co-conspirators since no evidence of any acts of alleged co-conspirators was ever presented.

Accordingly, the appellant's conviction as to Counts 1 and 3 must be REVERSED and these counts must be DISMISSED.

## II. *The Jury Instructions*

Rubio–Villareal submits that the district court gave a jury instruction which resulted in an impermissible shifting of the burden of proof.

■ Rubio–Villareal contends that the jury instruction misstated the law. Accordingly, de novo review is appropriate. *See United States v. Lopez*, 885 F.2d 1428, 1433 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990) ("Whether a jury instruction misstates the applicable law is a legal question we review de novo.").

The jury instruction stated:

You are instructed that if you find that the defendant was the driver of a vehicle containing contraband in this case; and if you find that the cocaine was found inside that vehicle, and concealed in its body, you may infer from these two facts, that the defendant knew that the cocaine was in the automobile; however, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstance shown by the evidence in this case warrants any inference which the law permits the jury to draw.

In addition, the district judge instructed the jury:

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant, for the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence; so if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a defendant is guilty of a charge, it must acquit.

Unless the government proved beyond a reasonable doubt that the defendant has committed every element of the offense with which he is charged, you must find him not guilty.

You, of course, may not find any defendant guilty until you find beyond a reasonable doubt that every element of the offense, as defined in these instructions, was committed by some person or persons, and that the defendant participated in its commission.

Mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was participating and not merely a knowing spectator.

■ Because the government bears the burden of proving every element beyond a reasonable doubt, an instruction which shifts the burden of persuasion to the defendant is unconstitutional. *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979). Rubio–Villareal argues that it was error for the lower court to instruct the jury that it could infer the existence of specific knowledge on the part of the defendant based solely upon the act of driving the automobile across the border because this instruction impermissibly shifted the burden of proof.

In support of this proposition, he relies on *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *United States v. Martinez*, 514 F.2d 334 (9th Cir.1975). In *Sandstrom*, the Supreme Court reversed a defendant's conviction based upon an analysis of a jury instruction which stated that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Sandstrom*, 442 U.S. at 513, 99 S.Ct. at 2453. The Court held that the presumption contained in the instruction could have been interpreted by a reasonable jury as conclusive or persuasion-shifting.

In *Martinez*, this court held that under the facts of that case,[2] an instruction which

---

2. In *Martinez*, defendant Martinez and three other passengers crossed the border into the

stated "that when one drives a car laden with contraband, there is a substantial basis from which the trier of fact ... may infer that the driver has knowing possession of the contraband ..." was impermissible, and warranted remand for a new trial. *Martinez* 514 F.2d at 341.

As in *Martinez*, the jury instruction in this case permitted the jurors to return a guilty verdict on the basis of insufficient evidence. The instruction was improper in that it failed to inform the jurors that they could infer knowledge only if they found that Rubio–Villareal drove a truck that contained concealed cocaine *and* they found that there were other facts (such as prior control of the vehicle), which, when considered along with that circumstance, supported the inference.[3] Instead of receiving an instruction requiring them to find sufficient facts (including the driving of the vehicle) to warrant an inference of knowledge,[4] the jurors were told that it was enough that Rubio–Villareal drove a vehicle containing contraband.

In *Martinez*, upon finding that the jury instruction was deficient, we reversed and remanded for a new trial without considering whether the error was harmless. Our subsequent cases have made clear, however, that harmless error analysis is appropriate in considering a claim that the instruction improperly permitted the jury to find the defendant guilty on less than sufficient evidence. *See, e.g.,* *United States v. Valle–Valdez*, 554 F.2d 911, 914 (9th Cir.1977). We are required to reverse unless we find that the error was harmless beyond a reasonable doubt.[5]

In determining whether an instructional error was harmless beyond a reasonable doubt we look to the evidence actually adduced at trial. *See United States v. Herbert*, 698 F.2d 981, 987 (9th Cir.), *cert. denied*, 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983) (finding erroneous jury instruction harmless as to defendant with respect to whom there was "overwhelming evidence" of the requisite mental

---

United States in a car in which Customs agents found a tissue box in the center of the dashboard containing 117 grams of cocaine. *Martinez,* 514 F.2d at 336–337. The car was leased to Dabney, a rear-seat passenger, who said the cocaine was hers. *Id.* at 337. Martinez testified at trial that he was with the others only as a driver and translator, and knew nothing of the cocaine. *Id.* No other evidence directly contradicted his claims, and some evidence supported it. *Id.*

3. In *Martinez*, we noted that once the judge instructs the jurors that they may infer knowledge solely on the basis of insufficient evidence, the judge cannot cure the error merely by stating that they may *also* infer knowledge from that evidence "as well as all the other facts in the case." That is what the trial court did in *Martinez*. 514 F.2d at 341. We found that the error was not cured. *Id.* at 342 ("It is true that the second sentence refers, in passing, to 'all the other evidence in the case,' but the first sentence does not"). However, *Martinez* strongly implies that where the *only* instruction relating to knowledge requires the jury to look to all of the facts of the case, there is no error, even though the only reference in the instruction to specific facts is to the driving of a vehicle containing contraband.

4. Although we noted in dictum in *Martinez,* that "[t]here will be many cases in which the instruction [given there] would be perfectly proper," *id.*

at 342, it is clear that such is not the case here. The *Martinez* dictum, which has never subsequently been cited, is most sensibly read to refer to two kinds of cases: (1) those where the challenged jury instruction is embedded in a larger instruction that makes clear that the mere fact of driving a vehicle containing contraband cannot by itself justify an inference of knowledge; and (2) cases where there is a stipulation that the driver of the vehicle had sole possession of the vehicle for a substantial period before the trip. This case fits into neither category.

5. In *Valle–Valdez,* we left open the question whether the kind of instructional error at issue here must be shown to be harmless beyond a reasonable doubt. 554 F.2d at 916–17. Citing *Valle–Valdez,* we subsequently stated that a reversal is required if there is a "reasonable possibility that the error materially affected the verdict." *United States v. Herbert,* 698 F.2d 981, 987 (9th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983). *Valle–Valdez* equated the "reasonable possibility" standard with the "beyond a reasonable doubt" standard. 554 F.2d at 916–17 (describing *United States v. Rea,* 532 F.2d 147, 149 (9th Cir.1976) and *United States v. Duhart,* 496 F.2d 941, 945 (9th Cir.), *cert. denied,* 419 U.S. 967, 95 S.Ct. 230, 42 L.Ed.2d 182 (1974), as employing a "reasonable possibility standard" where both *Rea* and *Duhart* used a "beyond a reasonable doubt" standard). Thus, it is clear that the "beyond a reasonable doubt" standard applies here.

state, but holding that the same instruction was not harmless with respect to second defendant); *United States v. Rhodes*, 713 F.2d 463, 476 (9th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983) (any error in permissive jury instruction was harmless where the evidence presented at trial rendered the conclusion reached by the jury "virtually inescapable"). As we have stated, the evidence introduced at trial was sufficient for a reasonable juror to have concluded that Rubio–Villareal knew the cocaine was concealed in the truck. *See supra* at 1499. However, we cannot say that the evidence on this point was "overwhelming" or that the conclusion that Rubio–Villareal had knowledge was "virtually inescapable." While the jurors may have inferred such knowledge from the circumstances of the case, we cannot say beyond a reasonable doubt that the erroneous jury instruction did not affect the verdict. As a result, the error was not harmless. We must therefore remand for a NEW TRIAL.

### III. *Expert Witnesses*

Rubio–Villareal asserts that the trial court abused its discretion in refusing to admit evidence from two proffered experts—one on Mexican culture,[6] and the other on alcoholism—and contends that this exclusion effectively denied him the opportunity to present his defense in full. We address this contention in the event that it becomes an issue at any new trial.

■■■ A trial court's exclusion of expert testimony is reviewed for manifest error or abuse of discretion. *United States v. Brodie*, 858 F.2d 492, 495 (9th Cir.1988).

■■■ This court has previously held that a district court's denial of defense counsel's request to admit the testimony of an expert on Mexican culture does not constitute an

abuse of discretion. *United States v. Ruelas–Altamirano*, 463 F.2d 1197, 1198–99 (9th Cir.1972).

■■■ Rubio–Villareal also intended to introduce an alcoholic and drug recovery counselor, who would have presented testimony that Rubio–Villareal was a classic, chronic alcoholic subject to memory loss and an inability to keep a job. Rubio–Villareal contended that his witness was an "expert" in the field of alcoholism because the witness himself was a reformed alcoholic and an experienced counselor to alcoholics and had been qualified as an expert in state court. However, the witness's lack of formal training, his slight familiarity with Rubio–Villareal and counsel's failure to present him for *voir dire* provided the court with a reasonable basis to exclude the proffered testimony under Fed.R.Evid. 104(a).

Accordingly, the exclusion of the two experts by the lower court was neither manifest error nor an abuse of discretion.

### IV. *Prior Acts Evidence*

Rubio–Villareal objects to the district court's admittance under Fed.R.Evid. 404(b)[7] of three pieces of evidence: (1) a 1985 conviction for the importation of marijuana, (2) statements made by appellant after his 1985 arrest, and (3) statements made by appellant after his arrest for the instant offense about several prior, recent incidents of driving cars across the border for hire. We address these contentions also in the event that they become issues at any new trial.

■■■■ A trial court's decision on the admissibility of prior bad acts pursuant to Fed.R.Evid. 404(b) is reviewed for abuse of discretion. *United States v. Lewis*, 837 F.2d 415, 418–19 (9th Cir.), *cert. denied*, 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323

---

**6.** The proffered testimony would have shown that Rubio–Villareal's failure to register his truck is a common phenomenon in Mexico. The cultural expert would also have testified concerning the lifestyles of Mexicans in the lower socio-economic bracket.

**7.** Fed.R.Evid. 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(1988). As to whether evidence comes within the scope of Rule 404(b), review is de novo. *United States v. Mundi*, 892 F.2d 817, 820 (9th Cir.1989).

## A. *The 1985 Conviction for Importation*

 Whenever the government offers "other act" evidence under 404(b) in an effort to prove knowledge or intent on the part of a defendant, it must establish: (1) that the evidence of the prior conduct tended to show an element of the charged offense that was a material element in the case; (2) in some cases, that the prior conduct was similar to the offense charged; (3) clear and convincing proof that the defendant committed the prior acts; (4) that the probative value must not be substantially outweighed by the danger of unfair prejudice; and (5) that the prior act is not too remote in time. *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir.1989) (citing *United States v. Sarault*, 840 F.2d 1479, 1485 (9th Cir.1988)).[8]

Rubio–Villareal argues by reference to *United States v. Hernandez–Miranda*, 601 F.2d 1104, 1108 (9th Cir.1979) that the similarity between his 1985 conviction and the present case does not satisfy elements one and two above. In *Hernandez–Miranda*, the defendant was convicted on charges of importation of heroin with the intent to distribute. Defendant had concealed the heroin in various places in his car. Three years prior to the heroin incident, defendant had been convicted for smuggling marijuana. Defendant had been one of six people backpacking approximately 80 kilograms of marijuana into the United States from Mexico. During the trial, the district court allowed defendant's prior conviction into evidence. On appeal, ,this court held that it was error for the district court to admit the prior conviction. This court not-

ed that "[t]he sole similarity between the prior offense and the offense for which [defendant] was on trial is smuggling contraband across the border." *Id.* at 1108.

The government, on the other hand, claims appellant's prior conviction for illegal importation was quite similar to the current charges. Additionally, the government argues that any prejudicial effect that admittance of the evidence may have had was eliminated because both at the time when the evidence was offered at trial, and again during final jury instructions, the district court informed the jury of the limited purpose for which the evidence was being offered. The government argues that since the need for the evidence was high, *United States v. Bailleaux*, 685 F.2d 1105, 1112 (9th Cir.1982), and the judge gave very careful limiting instructions, *id.*, the balancing required by Rule 403 weighed in favor of the admission of the evidence.

 We agree with the government's analysis. The similarities between Rubio–Villareal's 1985 conviction and the instant offense are striking. In 1985, he drove a truck across the border at San Ysidro for pay; the truck had a secret compartment containing marijuana. In 1989, he again drove a truck across the border at San Ysidro; the truck had a similarly constructed secret compartment in a similar location; and that compartment also contained drugs—albeit cocaine, rather than marijuana.[9] Although appellant claimed ownership of the truck in the most recent offense, the vehicle registration was not in his name and he could not produce the pink slip. The similarity between the two offenses is undeniable.

The district court's admission of the 1985 conviction was not an abuse of discretion.

---

**8.** The United States Supreme Court modified the third of the above factors, in a case involving an admission relating to an act similar to the one charged, to require only that the evidence be sufficient "to support a finding by the jury that the defendant committed the similar act." *Huddleston v. United States*, 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988).

**9.** As the government points out, where evidence is offered to show knowledge and intent, it is not necessary that the illegal drug involved in the prior offense be identical to the illegal drug involved in the charged crimes. *United States v. Lopez–Martinez*, 725 F.2d 471, 477 (9th Cir.), *cert. denied*, 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984).

### B. *Appellant's post-arrest statement of 1989*

 After his 1989 arrest, Rubio–Villareal admitted that he had recently and frequently driven cars across the border for pay. The district court permitted the Government to use that statement in rebuttal over objection. The district court decision is now before us on this appeal.

This statement was admissible under Fed.R.Evid. 801(d)(2)(A). This evidence was relevant to the charges of conspiracy. However, as discussed earlier, the sum of evidence presented by the Government at trial was insufficient to support conviction on the conspiracy counts. In the absence of any conspiracy counts upon any new trial, the trial court will have to make another determination as to the admissibility of this statement.

### C. *Statements made after the 1985 arrest*

 Rubio–Villareal next argues that the trial court's admittance of the evidence of his initial denial in 1985 of knowledge of the contents of the vehicle he was driving and of his later confession, was reversible error because that evidence was not relevant to any material element in the present case.

We agree that there was little legitimate basis for the introduction of that evidence. In the present case, the jury was informed that after his 1985 arrest, Rubio–Villareal initially professed his innocence, but then later confessed to the illegal importation. From this fact alone, the jury in this case may have concluded that his present claim of innocence was nothing more than a repeat of prior post-arrest conduct. Permitting the introduction of such evidence would essentially deny defendant any hope of claiming lack of knowledge to the jury with success. We find that the introduction of the 1985 post-arrest statements was prejudicial and improper.

Having concluded that the convictions on Counts 2 and 4 must be reversed because of the improper jury instruction, we need not proceed to consider whether the error was harmless. Upon any retrial, this evidence should not be admitted.

## CONCLUSION

Appellant's convictions are REVERSED and the case is REMANDED for DISMISSAL of Counts 1 and 3, and for a NEW TRIAL or other proceedings consistent herewith as to Counts 2 and 4.