66 F.3d 336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rosa CASTANEDA-SANDOVAL, Defendant-Appellant.
 No. 94-10539.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 15, 1995.
Decided Sept. 8, 1995.
 
 1
 Before: D.W. NELSON and T.G. NELSON, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 I.
 
 3
 Defendant Rosa Castaneda-Sandoval appeals her conviction on one count of importing marijuana and one count of possessing marijuana with intent to distribute, in violation of 21 U.S.C. Secs. 952 and 841(a)(1). Defendant contends on appeal that the district court erred by: (1) admitting her post-arrest statements over a Miranda objection; (2) admitting drug courier profile testimony as substantive evidence of Defendant's guilt; and (3) admitting an interrogating agent's testimony as to Defendant's translated post-arrest statements. Defendant also contends that her trial was tainted by repeated instances of prosecutorial misconduct and that the evidence was insufficient to support a conviction. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and affirm.
 
 
 4
 Defendant's case was first tried to a jury in February 1993, resulting in a conviction on both counts. The district court sentenced her to 21 months in prison, and Defendant appealed. On April 4, 1994, this court reversed Defendant's conviction based on the district court's erroneous admission of drug courier profile testimony as substantive evidence of Defendant's guilt. Following a trial on remand, Defendant was again convicted of both counts. The district court sentenced her to five years probation. This appeal followed.
 
 II.
 
 5
 Defendant challenges the voluntariness of her post-arrest statements. The Government notes that Defendant did not make such a challenge on her initial appeal following her first conviction. The Government thus argues that Defendant has waived the issue and this court need not address it. The Government cites United States v. Wright, 716 F.2d 549 (9th Cir.1983), in which this court held that a trial court was not required to hold a second suppression hearing with respect to various seized items where the defendant did not challenge the legality of the seizure in his first appeal.
 
 
 6
 In the instant case, however, the trial court did hold a hearing prior to the second trial on Defendant's motion to reconsider the court's earlier ruling admitting Defendant's post-arrest statements. The trial court's ruling following this second hearing, during which the court apparently considered additional evidence as to the sufficiency of the Miranda warnings given Defendant, is subject to review by this court on the instant appeal.
 
 
 7
 Defendant contends that the warnings given her by U.S. Customs Inspector Fred Alvarez in Spanish were inadequate and misleading. Her contention focuses largely on his apparent mispronunciation of the word "ceder," which means to cede or waive. Instead, Inspector Alvarez apparently used the word "cedar," which according to Defendant's attorney has no meaning in the Spanish language.
 
 
 8
 Miranda warnings are sufficient if they convey to a suspect his or her rights as required under Miranda, to wit:
 
 
 9
 [H]e has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.
 
 
 10
 Duckworth v. Eagan, 492 U.S. 195, 202 (1989). The words used in advising a suspect of his or her rights need not be taken verbatim from the Miranda decision. Id.
 
 
 11
 At issue in the instant case is thus not the precise wording used by Inspector Alvarez, but whether the warning he gave Defendant was adequate to convey her core rights under Miranda. In fact, it appears that all the essentials prescribed in Duckworth were present in the warning read by Alvarez: that Defendant had the right to remain silent, that anything she said could be used against her in a court of law, that she had the right to have an attorney present during questioning, and that if she could not afford an attorney, one would be provided for her. Defendant does not allege that she did not understand her rights as read to her by Alvarez. In her opening brief, Defendant alleges only that: "It is impossible to ascertain what the defendant understood regarding her rights." In light of the foregoing, the trial court did not err in finding the Miranda warning given by Alvarez to be adequate.
 
 
 12
 Defendant next contends that the purported waiver of her Miranda rights took place in a highly coercive environment. The Government disputes Defendant's characterization of the setting for her interrogation as coercive. The trial court apparently found--as it was entitled to do--that the testimony of Inspector Alvarez and U.S. Customs Special Agent James Locke on this issue was more credible than that of Defendant. On the basis of the record presented here, the trial court's determination that Defendant voluntarily waived her Miranda rights is not clearly erroneous.
 
 III.
 
 13
 Defendant contends the district court made the same mistake on retrial that prompted this court's reversal following Defendant's first conviction, i.e., the admission of testimony regarding drug courier profiles as substantive evidence of Defendant's guilt. In its unpublished memorandum opinion reversing Defendant's conviction following her first trial, this court identified two aspects of Agent Richard Nuckles' testimony at Defendant's first trial as drug courier profile evidence: (1) that drug couriers do not necessarily appear nervous while crossing the border, and (2) that drug couriers often use children as decoys.
 
 
 14
 Agent Nuckles' testimony during Defendant's second trial, however, did not constitute similar drug courier profile evidence. Agent Nuckles testified generally as to how drug smuggling operations on the U.S.-Mexico border work, based on his experience as a U.S. Customs and Drug Enforcement Administration agent. Specifically, Nuckles testified as to: (1) how marijuana prices are determined; (2) how the drug is smuggled into the United States; (3) how much an owner might pay a courier to carry the drug into the United States; (4) the wholesale value of a pound of marijuana in April 1992; (5) the ample supply of people willing to drive marijuana across the border for a fee; (6) how the value of the drug increases as it moves up the distribution chain; (7) why it is important for the owner of the marijuana to keep control over the drugs; (8) whether a load of 88 pounds of marijuana could be for "personal use" instead of distribution; and (9) a brief description of a chart used to illustrate the agent's testimony.[1]
 
 
 15
 The only portion of Nuckles' testimony that even touches directly on the facts of Defendant's case is his assertion that 88 pounds of marijuana--the quantity found in Defendant's car--was more than a "personal use" quantity. This, however, was not "drug courier profile" evidence. The district court did not abuse its discretion in admitting Agent Nuckles' testimony.
 
 IV.
 
 16
 Defendant contends that the district court erred in admitting Agent Locke's testimony as to Agent Alvarez's translation of Defendant's post-arrest statements. The district court found that Alvarez was qualified to interpret Defendant's statements during the interrogation. The district court's decision that Agent Locke's testimony was not hearsay comports with the holding in United States v. Nazemian, 948 F.2d 522 (9th Cir.1991), cert. denied, 113 S.Ct. 107 (1992). Accordingly, the district court did not err in admitting the testimony.
 
 V.
 
 17
 Defendant alleges five distinct instances of prosecutorial misconduct, none of which drew objections from Defendant at trial: (1) Government counsel's statement on opening that the trial involved a "business transaction" that included a delivery of merchandise; (2) a question by Government counsel on cross of Defendant as to whether $4,000 to $8,000 (the sum the Government's expert witness estimated a courier might be paid for smuggling the amount of marijuana involved in this case) would help her provide for her children; (3) Government counsel asking Agent Locke whether he took representative samples from the marijuana bundles found in Defendant's car for testing by a DEA laboratory; (4) a question by the Government's counsel during cross of the Defendant as to whether her husband knew she was entering the United States; and (5) Government counsel's statement in rebuttal argument that the Defendant "dresses fairly nicely for a poor impoverished apple picker from Washington."
 
 
 18
 Whatever the propriety of each of the instances of conduct by the prosecution complained of herein, Defendant has wholly failed to show that she was prejudiced by such conduct. She has thus failed to carry her burden under the plain error analysis prescribed in United States v. Olano, 113 S.Ct. 1770, 1778 (1993).
 
 VI.
 
 19
 In challenging the sufficiency of evidence supporting her conviction, Defendant focuses on the element of knowledge. She notes that the Government did not produce a single piece of direct evidence that she knew the drugs were in her car. The marijuana was hidden in a concealed compartment. Defendant's fingerprints were not found on the drug bundles or on the hidden compartment itself. There was no evidence introduced of prior drug arrests or convictions.
 
 
 20
 A jury may properly infer that the driver and sole occupant of a vehicle has knowledge of any contraband found in the vehicle. See United States v. Davila-Escovedo, 36 F.3d 840, 843 (9th Cir.1994), cert. denied, 115 S.Ct. 953 (1995) (citing United States v. Rubio-Villareal, 927 F.2d 1495, 1499 (9th Cir.1991), vacated on other grounds, 967 F.2d 294, 296 (9th Cir.1992)). Although Defendant was not the sole occupant of the car she was stopped in, the other three occupants were her children, none of whom would likely have been responsible for the drugs.
 
 
 21
 The Government also introduced evidence of inconsistent or false statements made by Defendant before and after her arrest. The making of false and inconsistent statements is probative of consciousness of guilt. United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir.1992); United States v. Perkins, 937 F.2d 1397, 1401-02 (9th Cir.1991). A rational juror could thus have concluded beyond a reasonable doubt that the Government's explanation for Defendant's conduct, i.e., that she was smuggling drugs, was the correct one.
 
 VII.
 
 22
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Contrary to Defendant's assertions in her opening brief, Agent Nuckles did not testify during Defendant's second trial that "drugs are not smuggled in by persons who do not know that drugs may be hidden in the vehicles they are driving." Nor did Agent Nuckles testify, as represented in Defendant's opening brief, that a drug owner who uses an unwitting driver risked losing control over the drugs